UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KEYSPAN LNG, L.P.<br><br>v.<br><br>THE RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL;[1] MICHAEL M. TIKOIAN, in his Capacity as Chairman of the Rhode Island Coastal Resources Management Council; JAN P. MALIK; PAUL E. LEMONT; LAURENCE W. EHRHARDT; THOMAS RICCI; DAVID ABEDON; JERRY SAHAGIAN; DANIEL DAPONTE; EILEEN S. NAUGHTON; V. SUSAN SOSNOWSKI; JOSEPH R. PAOLINO; K. JOSEPH SHEKARCHI; GERALD P. ZARRELLA; NEIL GRAY; RAYMOND C. COIA; and FREDERICK VINCENT in their Capacities as Members of the Rhode Island Coastal Resources Management Council | ) | C.A. NO. 05-091L |

**STATE OF RHODE ISLAND'S ANSWER ON BEHALF OF DEFENDANTS AND COUNTER-CLAIM TO PRESERVE ELEVENTH AMENDMENT RIGHTS**

## INTRODUCTION

This case concerns a scheme to construct a private project on public land. Specifically, this case concerns a plan to force the State to accept a trespass on land underneath Narragansett Bay that the State holds as an incident of sovereignty.

In response, this pleading is based on the twin holdings of Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997): *First,* Congress is deemed *not* to intrude on State ownership of

[1] The Rhode Island Coastal Resources Management Council has no legal existence separate and apart from the State of Rhode Island and has no capacity to sue or be sued. Rhode Island Coastal Resources Management Council ("CRMC") is a state agency created by an Act of the Rhode Island General Assembly whose powers and duties are set forth at R.I. Gen. Laws §§ 46-23-1 *et seq.*, and the regulations adopted thereunder. The naming of the Coastal Resources Management Council must be treated as the naming of the State.

4

the sea-bed; and, *second*, in any event, under the Eleventh Amendment, Federal tribunals will not adjudicate private claims to the contrary.

Thus, the counter-claim below is a narrowly-focused declaratory judgment action, under the Eleventh Amendment, seeking to prevent a private developer from subjecting the State to a Federal process called a "Federal Consistency Certification Review" in a particular manner that is in derogation of the State's ownership of its public trust lands. Specifically, the counter-claim seeks to establish that, under the Eleventh Amendment, such rights are beyond the reach of a certain congressionally-established forum when that forum's jurisdiction is invoked in the particular manner attempted by KeySpan LNG, L.P. ("KeySpan").

As background, KeySpan is seeking to construct a marine terminal that would rest on the bed of Narragansett Bay. But KeySpan has not applied for a State deed, lease, or license; nor, alternatively, has KeySpan petitioned the pertinent State agencies for a declaration that it needs none. Instead, KeySpan is purporting to exclusively invoke (aside from coming before this Court) the procedurally and substantively constrained "Federal Consistency Certification Review" process with the aim of relegating the State to a merely nominal role with respect to State-owned public trust land.

The resolution of the counter-claim is urgent because of imminent deadlines that KeySpan would impose.

Moreover, the principle Complaint is itself barred by the Eleventh Amendment.

## ANSWER

1. The Defendants answer the multiple allegations of paragraph number 1 of the complaint as follows:

- Admitted that Plaintiff, KeySpan LNG, L.P. ("KeySpan"), "seeks a declaratory

judgment and injunctive relief."

- Denied that the relief is sought with respect to a "state *regulatory* program." This allegation is denied in that the program is one of *real estate management and land ownership* in addition to *regulation*. Otherwise, this particular allegation is admitted.
- Denied that "Defendants' assertion and threatened application of the State Coastal Resources Management Program arises in connection with the proposed *modification* to *existing*" interstate "liquefied natural gas ('LNG') storage tank and related facilities." This allegation is denied in that the proposal is for *installation* of a *new* off-shore facility and *major conversion* of the purpose of the existing on-shore facility. Otherwise, this particular allegation is admitted.
- Denied that the existing facility is federally authorized.
- Admitted that the existing facility is federally regulated.
- Denied that the proposed project is to be "located at 121 Terminal Road in the City of Providence." This allegation is denied in that a portion of the proposed project is to be located on submerged State-owned off-shore public trust land that is apart from that parcel. Otherwise, this particular allegation is admitted.
- Denied that KeySpan "submitted an application for the proposed modification" to the "Federal Energy Regulatory Commission ('FERC') pursuant to Section 3 of the Natural Gas Act, 15 U.S.C. § 717b(a), on April 30, 2004." This allegation is denied in that no valid complete application has been filed because no grant of an interest in the State-owned real estate has been shown. Also, denied that the proposal constitutes a "modification" for the reasons stated above. Otherwise, this

particular allegation is admitted.

- Admitted that the proposal includes installing a new ship berth in the Providence River.
- Denied that "[a]pplication and enforcement of the State Coastal Resources Management Program, including so-called Category B Assent permit requirements, are preempted by the federal Natural Gas Act ('NGA'), 15 U.S.C. §§ 717 *et seq.*, the recodified federal Natural Gas Pipeline Safety Act (NGPSA), 49 U.S.C. §§ 60101 *et seq.*, and federal regulations promulgated thereunder." This allegation is denied in that such Federal laws do not purport to affect State land *ownership.* Without limitation on the foregoing denial, Defendants specifically deny that the Assent constitutes a regulatory *permit* but, instead, Defendants assert that the Assent constitutes a *license-to-use-State-land.*
- Denied that such enforcement "constitutes an undue burden on interstate commerce under the Commerce Clause of the Constitution of the United States of America."
- Denied that the "State Coastal Resources Management Program, including its state permit and approval requirements, violate the Supremacy Clause as well as the Commerce Clause of the United States Constitution, Article VI, clause 2 and Article 1, §8, clause 3, respectively, and are unenforceable." Without limitation on the foregoing denial, Defendants specifically deny that the requirement is for a regulatory *permit and approval* but, instead, Defendants assert that the requirement is for a *license-to-use-State-land.*
- Denied that KeySpan "seeks a preliminary and permanent injunction against the

application and enforcement by Defendants and their successors of the State Coastal Resources Management Program, including the so-called Category B Assent *permit* requirement, to the Project." This allegation is denied in that KeySpan really seeks such an injunction against the Category B *license-to-use-State-land* requirement. Without limitation on the foregoing denial, Defendants specifically deny that the requirement is for a regulatory *permit* but, instead, Defendants assert that the requirement is for a *license-to-use-State-land.* Otherwise, this particular allegation is admitted.

To the extent not specifically addressed above, Defendants are without sufficient knowledge to admit or deny the allegations of paragraph 1 and it is, therefore, denied.

**JURISDICTION AND VENUE**

2. Denied that "[t]his Court has jurisdiction." The 11th Amendment and sovereign immunity bar this claim.

**PARTIES**

3. The Defendants answer the multiple allegations of paragraph number 3 of the complaint as follows:

- Denied that "Keyspan is a Delaware limited partnership having its principal place of business at 30 Kennedy Plaza, Providence, Rhode Island." This allegation is denied in that KeySpan has its principle place of business at 121 Terminal Road, Providence, Rhode Island 02905. Otherwise, this particular allegation is admitted.
- Denied that KeySpan "is engaged solely in the interstate transportation of and storage of LNG."
- Admitted that the existing "[f]acility is part of an interstate system of natural gas

transmission facilities servicing customers in New York, Rhode Island, and Massachusetts." By making this admission, the Defendants do not adopt the Plaintiff's definition of the "Facility" or waive any of the denials made in that regard.

- Denied that KeySpan "is a 'natural-gas company' within the meaning of §2(6) of the NGA, 15 U.S.C. §717a(6), and [KeySpan], the Facility, and the interstate pipeline industry generally are subject to regulation by FERC pursuant to the NGA and 18 CFR Chapter I."
- Admitted that the existing "facility is comprised of 'interstate gas pipeline facilities' engaged in the interstate transportation of gas within the meaning of NGPSA as recodified at 49 U.S.C. §60101(a)(6) and (21) and are facilities subject to §7 of the NGA." By making this admission, the Defendants do not adopt the Plaintiff's definition of the "Facility" or waive any of the denials made in that regard.

To the extent not specifically addressed above, Defendants are without sufficient knowledge to admit or deny the allegations of paragraph 3 and it is, therefore, denied.

4. Admitted that "Defendant Rhode Island Coastal Resources Management Council ('CRMC') is a state agency created by an Act of the Rhode Island General Assembly whose powers and duties are set forth at R.I. Gen. Laws §§ 46-23-1 *et seq.*, and the regulations adopted thereunder." In making this admission, this allegation is understood to signify that the CRMC is *created* by said Act, alone, and not by said regulations. By making this admission, the Defendants do not adopt any suggestion that CRMC is a proper party-Defendant.

5. Admitted that "Defendant Michael M. Tikoian is Chairman of the CRMC and is sued

in said capacity." By making this admission, the Defendants do not adopt any suggestion that such suit is proper and not barred by the Eleventh Amendment.

6. Admitted that "Defendants Jan P. Malik, Paul E. Lemont, Laurence W. Ehrhardt, Thomas Ricci, David Abedon, Jerry Sahagian, Daniel Daponte, Eileen S. Naughton, V. Susan Sosnowski, Joseph R. Paolino, K. Joseph Shekarchi, Neil Gray, Raymond C. Coia, and Frederick Vincent are members of the CRMC and are sued in said capacity." By making this admission, the Defendants do not adopt any suggestion that such suit is proper and not barred by the Eleventh Amendment.

**FACTS**

7. The Defendants answer the multiple allegations of paragraph number 7 of the complaint as follows:

- Admitted that "[t]he NGA, 15 U.S.C. § 717, declares that ' . . . the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.'"
- Denied that, "[b]y virtue of the NGA, Congress has conferred upon FERC exclusive jurisdiction over the transportation and/or sale of natural gas for resale in interstate and foreign commerce." This allegation is specifically denied, *inter alia*, in that Congress did not pre-empt State land ownership. This allegation is further denied in that Congress did not delegate to FERC the power to exercise or relinquish the Federal Navigational Servitude, which servitude is implicated by such activities.

- Denied that "[t]he NGA, together with the NGPSA, form a comprehensive and exclusive national regulatory scheme for natural gas transported and/or sold for resale in interstate and foreign commerce and the facilities associated with such transactions." This allegation is specifically denied, *inter alia*, in that Congress did not pre-empt State land ownership. This allegation is further denied in that Congress did not delegate to FERC the power to exercise or relinquish the Federal Navigational Servitude, which servitude is implicated by such activities.

8. The Defendants answer the multiple allegations of paragraph number 8 of the complaint as follows:

- Denied that "[o]n April 30, 2004, KeySpan, pursuant to Section 3 of the NGA, 15 U.S.C. §717b(a), and 18 C.F.R. Parts 153 and 380, submitted to FERC its 'Application of KeySpan LNG, L.P. for Authorization of a Liquid Natural Gas Terminal' (the 'FERC Application')." This allegation is denied in that no valid complete application has been filed because no grant of an interest in the state-owned real estate has been shown. Otherwise, this particular allegation is admitted.
- Denied that "[t]he FERC Application requests authorization from FERC to site, construct, and operate the Project and, pursuant to Section 7(b) of the NGA, 15 U.S.C. §717(b), to abandon certain facilities that will be replaced by the proposed improvements." This allegation is denied in that the application does not seek the requisite authorization to site and construct the marine facilities, which can only be granted by the separate concurrence of *both* the U.S. Army Corps of Engineers and the CRMC.

9. The Defendants answer the multiple allegations of paragraph number 9 of the complaint as follows:

- Denied that "[t]he FERC Application, as required by 18 C.F.R. §§153.8(a)(7), 380.3, and 380.12, includes an 'environmental report' that consists of 'thirteen resource reports,' (the 'Resource Reports')." This allegation is denied in that such matters are not addressed and identified in that KeySpan does not consider the adverse effects of an anticipated trespass on State land. Moreover, this allegation is denied in that such matters are not addressed and identified in a competent, comprehensive, thorough, fair and objective manner. Further denied in that the application is invalid. Otherwise, this particular allegation is admitted.
- Denied that "[t]he Resource Reports, among other things: (1) address conditions or resources that might be directly or indirectly affected by the Project; (2) identify significant environmental effects expected to occur as a result of the Project; (3) identify the effects of construction, and operation of the Project; and (4) identify measures proposed to enhance the environment or to avoid, mitigate, or compensate for adverse effects of the Project." This allegation is denied in that such matters are not addressed and identified in that KeySpan does not consider the adverse effects of an anticipated trespass on State land. Moreover, this allegation is denied in that such matters are not addressed and identified in a competent, comprehensive, thorough, fair and objective manner. Further denied in that the application is invalid. Otherwise, this particular allegation is admitted.

- Denied that "[t]he Resource Reports in the FERC Application address the following specific topics:

  Resource Report No. 1 — General Project Description
  Resource Report No. 2 — Water Use and Quality
  Resource Report No. 3 — Fish, Vegetation and Wildlife
  Resource Report No. 4 — Cultural Resources
  Resource Report No. 5 — Socioeconomics
  Resource Report No. 6 — Geological Resources
  Resource Report No. 7 — Soils
  Resource Report No. 8 — Land Use, Recreation and Aesthetics
  Resource Report No. 9 — Air and Noise Quality
  Resource Report No. 10 — Alternatives
  Resource Report No. 11 — Reliability and Safety
  Resource Report No. 12 — PCB Contamination
  Resource Report No. 13 — Engineering and Design Material"

  This allegation is denied in that such matters are not addressed and identified in that KeySpan does not consider the adverse effects of an anticipated trespass on State land. Moreover, this allegation is denied in that such matters are not addressed and identified in a competent, comprehensive, thorough, fair and objective manner. Further denied in that the application is invalid. Otherwise, this particular allegation is admitted.

10. Denied that "[t]he environmental impacts of the Project are also evaluated by FERC through the preparation of an environmental impact statement pursuant to the Natural Environmental Policy Act, 42 U.S.C. §§4321 *et seq.*, and 18 C.F.R. § 380.6. FERC promulgated a draft Environmental Impact Statement on the Project on November 30, 2004." This allegation is denied in that the impacts are not evaluated in that FERC does not consider the adverse effects of an anticipated trespass on State land. Moreover, this allegation is denied in that the impacts are not addressed and identified in a competent, comprehensive, thorough, fair and objective manner. Otherwise, this particular allegation is admitted.

11. The Defendants answer the multiple allegations of paragraph number 11 of the complaint as follows:

- Admitted that "[t]he Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 1451 *et seq.*, and 15 C.F.R. Part 930, require that applicants for certain federal licenses or permits provide to the federal licensing or permitting authority a 'certification that the proposed activity complies with and will be conducted in a manner consistent with' any federally-approved state coastal resources management program and, at the same time, furnish to the state agency designated under the CZMA 'a copy of the certification and necessary data and information.' *See* 15 C.F.R. §930.57." Denied with respect to any suggestion that the CZMA displaces the State's title to land.
- Admitted that "[t]he designated state agency then shall notify the federal licensing or permitting authority and the applicant whether the designated state agency concurs with or objects to the consistency certification. *See* 15 C.F.R. § 930.62." Denied with respect to any suggestion that the CZMA displaces the State's title to land.

12. Admitted that "[t]he Project is subject to the requirements set forth in paragraph 11 above and the CRMC is the state agency designated under the CZMA to review the certification." By making this admission, the Defendants do not adopt any suggestion that the CZMA displaces the State's title to land.

13. Denied that "[o]n November 30, 2004, Plaintiff, pursuant to the CZMA and 15 C.F.R. §930.57, submitted to FERC its 'coastal zone consistency certification' (the 'CZMA Consistency Certification') for the Project." This allegation is denied in that the submission is invalid.

Otherwise, this particular allegation is admitted. By making this admission, the Defendants do not adopt any suggestion that the CZMA displaces the State's title to land.

14. The Defendants answer the multiple allegations of paragraph number 14 of the complaint as follows:

- Denied that "[o]n December 1, 2004, Plaintiff, pursuant to 15 C.F.R. Part 930, Subpart D and Section 400 of the Rhode Island Coastal Resources Management Program, furnished to the CRMC copies of the CZMA Consistency Certification, the FERC Application, a document entitled 'Rhode Island Coastal Resources Management Plan Consistency Certification for KeySpan, LNG, L.P. Plant Upgrade, Providence, Rhode Island,' and the U.S. Army Corps of Engineers Application for the Project." This allegation is denied in that such furnishing was not validly done pursuant to those provisions. Otherwise, this particular allegation is admitted.

- Admitted that:

  [I]n its transmittal letter to the CRMC, KeySpan advised:

  > Based upon that legal analysis, we have concluded that because the Project is within the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC") under Section 3 of the Natural Gas Act, 15 U.S.C. § 717b(a), and applicable FERC regulations, the CRMC's jurisdiction over the Project is limited to a determination of federal consistency under the CZMA and a separate Category B Assent is not required.

  Denied as to the substance of the content of the communication.

15. Denied that, "[b]y letter dated January 31, 2005, the CRMC responded to Plaintiff's filing of December 1, 2004 and stated that: 'By this letter the CRMC concludes that, before the

Project may proceed, KeySpan is required by law to (i) obtain a federal consistency determination, and (ii) comply with the Category B Assent process. . . .'" This allegation is denied in that it does not put CRMC's quoted statement in the proper context of CRMC's assertion of State title under the public trust doctrine. Otherwise, this particular allegation is admitted.

16. The Defendants answer the multiple allegations of paragraph number 16 of the complaint as follows:

- Denied that "[t]he State Coastal Resources Management Program requires persons applying for a Category B Assent to submit information that substantially overlaps the application requirements under the NGA and the FERC regulations." This allegation of an "overlap" is denied in that the requirement that an applicant must seek an interest or license in the submerged real estate is fulfilled only through the Category B assent process and no other.
- Denied that "[a]reas of overlap include, but are not limited to, need, compliance with local zoning, building, and fire code requirements, safety, and environmental impacts." This allegation of an "overlap" is denied in that the requirement that an applicant must seek an interest or license in the submerged real estate is fulfilled only through the Category B assent process and no other.
- Admitted that an appeal from a CRMC decision on a Category B Assent application is to the Rhode Island courts. Admitted that "[a]n appeal from a CRMC decision objecting to a CZMA coastal zone consistency certification filed with the CRMC is to the Secretary of the United States Department of Commerce. *See* 15 C.F.R. § 930.125." By making this admission, the Defendants do not

adopt any suggestion that, in making such a decision, the CRMC is acting other than as an arm of the Federal Government.

17. Denied as ungrammatical. Assuming that paragraph 17 is corrected as indicated here, then the response follows. Denied that, "[b]y asserting subject matter jurisdiction over the Project and requiring Plaintiff to seek and obtain a Category B Assent for the Project pursuant to the State Coastal Resources Management Program, Defendants have intentionally interfered, and unless enjoined herewith, will continue to interfere with Plaintiffs [*sic,* should be "Plaintiff's"] efforts to permit [*sic,* should be "obtain a permit or permits for"] and construct the Project, thereby causing Plaintiff and the public to suffer irreparable injury, damage and loss for which Plaintiff and the public have no adequate remedy at law." Without limitation of the foregoing denial, Defendants specifically deny that requiring a *license-to-use-State-land* interferes with obtaining a *regulatory* permit.

18. The Defendants answer the multiple allegations of paragraph number 18 of the complaint as follows:

- Denied that "Defendants' threatened application and assertion of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that the Plaintiff apply for and obtain a Category B Assent has created an actual controversy between Plaintiff and Defendants." This allegation is denied in that CRMC is not an entity capable of suing and being sued. Therefore, CRMC cannot be a party to a "controversy" as that word is used by KeySpan. Otherwise, this particular allegation is admitted. By making this admission, the Defendants do not adopt any suggestion that the judicial power of the United States extends to such controversy.

- Denied that "[t]he Defendants have intentionally acted in violation of the laws and constitution of the United States by asserting jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that the Plaintiff apply for and obtain a Category B Assent and will continue to do so unless such asserted jurisdiction is declared to be unlawful, null, void and unenforceable."

**ANSWER AS TO COUNT I**

19. Defendants repeat the responses set forth in paragraphs 1 through 18 above.

20. Denied that "Defendants' threatened application and assertion of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent is in direct conflict with and is preempted by the NGA, the recodified NGPSA and FERC regulations."

**ANSWER AS TO COUNT II**

21. Defendants repeat the responses set forth in paragraphs 1 through 20 above.

22. Denied that "Defendants' threatened application and assertion of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent acts as an obstacle to the realization of Congressional objectives as set forth in the NGA, the FERC regulations, and the recodified NGPSA in violation of the Supremacy Clause of the United States Constitution."

**ANSWER AS TO COUNT III**

23. Defendants repeat the responses set forth in paragraphs 1 through 22 above.

24. Denied that "Defendants' threatened application and assertion of subject matter

jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent purports to regulate in an area where Congress, pursuant to the NGA, the recodified NGPSA and FERC regulations, has occupied the field to the exclusion of state regulation and, as such, is pre-empted." Without limitation of the foregoing denial, Defendants specifically deny that requiring a *license-to-use-State-land* is a requirement for a *regulatory* permit.

**ANSWER AS TO COUNT IV**

25. Defendants repeat the response set forth in paragraphs 1 through 24 above.

26. The Defendants answer the multiple allegations of paragraph number 26 of the complaint as follows:

- Denied that "Defendant's [*sic*, should be "Defendants'"] threatened application and assertion of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent purports to regulate matters that are within the scope of the comprehensive regulatory scheme established by Congress under the NGA and recodified NGPSA."
- Denied that "such assertion and threatened application would purport to give Defendants the right to regulate matters that are comprehensively and exclusively regulated by FERC and DOT, in violation of the Supremacy Clause of the United States Constitution."

**<u>ANSWER AS TO COUNT V</u>**

27. Defendants repeat the response set forth in paragraphs 1 through 26 above.

28. The Defendants answer the multiple allegations of paragraph number 28 of the

complaint as follows:

- Denied that "Defendant's [*sic*, should be "Defendants'"] assertion and threatened application of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent constitutes an illegal attempt to regulate facilities used for the transportation of natural gas in interstate and foreign commerce, in violation of the Commerce Clause of the United States Constitution." Without limitation of the foregoing denial, Defendants specifically deny that they are attempting to ***regulate*** by asserting land ownership and a concomitant requirement for a *license-to-use-State-land*.
- Denied that "[s]uch regulation is reserved exclusively to FERC and to the DOT." This allegation is denied in that such regulation does not pre-empt land ownership.

29. The Defendants answer the multiple allegations of paragraph number 29 of the complaint as follows:

- Denied that "Defendant's [*sic*, should be "Defendants'"] assertion and threatened application of subject matter jurisdiction over the Project under the State Coastal Resources Management Program with respect to the requirement that Plaintiff apply for and obtain a Category B Assent constitutes an attempt to veto or circumvent FERC regulations and FERC proceedings pertaining to the transportation of gas in interstate and foreign commerce."
- Denied that "[t]he Defendants by their actions are attempting to regulate matters that are comprehensively and exclusively regulated by FERC in such a manner as

to prohibit and thus substantially (i) interfere with the interstate and foreign transportation of natural gas in interstate commerce, and (ii) increase the cost and expense thereof."

- Denied that "the aforesaid actions by Defendants unduly burden interstate commerce in violation of the Commerce Clause of the United States Constitution."

## AFFIRMATIVE DEFENSES

30. Eleventh Amendment and Sovereign Immunity.

31. Failure to exhaust administrative remedies.

32. Abstention

33. Laches.

34. Unclean hands.

35. Insufficiency of Service-of-Process.

36. Lack of Subject-matter Jurisdiction.

37. Discretionary Immunity.

38. Judicial estoppel and quasi-judicial estoppel.

39. Failure to state a claim upon which relief can be granted.

## STATE OF RHODE ISLAND'S COUNTER-CLAIM

### PARTIES

40. The State of Rhode Island is a sovereign State.

41. The State and all defendants are represented in this action by Patrick C. Lynch who is the Attorney General for the State of Rhode Island and, as such, is the chief law enforcement officer of the State of Rhode Island.

KeySpan does not. KeySpan must apply under purely state law, to the CRMC, for a license to use state land separate and apart from any Federal determination requirements."

58. Two days later, on December 1, 2004, KeySpan, *per* a letter from its attorneys to the Director of CRMC, indicated it did *not* need a Category B assent.

59. That same day, on December 1, 2004, KeySpan simultaneously submitted a purported application to CRMC exclusively for federal consistency review.

60. That same day, on December 1, 2004, KeySpan simultaneously withdrew its application to CRMC for a category B assent.

61. On January 31, 2005, the State, *per* a letter from the Director of CRMC to KeySpan's attorneys, insisted that KeySpan did need a Category B assent.

62. Subsequently, by letter from the firm of Ferrucci & Russo to KeySpan's attorneys, the City of East Providence made inquiry as to KeySpan's position.

63. Subsequently, by letter from the undersigned office to KeySpan's attorneys, the State made inquiry as to KeySpan's position.

64. On February 16, 2005, by letter from KeySpan's attorneys to CRMC, KeySpan indicated it did *not* need a Category B assent and that it had invoked a 6-month review period on December 1, by which the State would relinquish all of its rights under the CZMA unless the State rendered a decision on consistency within that period.

65. The State will suffer irreparable harm to its public trust rights if the six-month period claimed by KeySpan lapses without KeySpan either acknowledging the State's ownership and title or allowing the State to have an adjudication of the such ownership and title in a tribunal of its choosing.

66. The CRMC, in the context of a Category B application, would entertain a claim by KeySpan, that CRMC is pre-empted or precluded from denying a site license.

67. In any event, the courts of Rhode Island would entertain such a claim.

68. KeySpan has never made such an assertion or invoked those tribunals.

**WHEREFORE**, Defendants demand relief as follows:

A. That the Court enter a final declaratory judgment adjudging and declaring that:

(1) KeySpan's attempted invocation of subject-matter jurisdiction over the water-based aspects of the project under Federal Consistency Certification review without also applying to the State Coastal Resources Management Program for a site license in the form of Category B Assent is illegal, null, void, and unenforceable because it constitutes a violation of the Eleventh Amendment.

(2) KeySpan is prevented by the Eleventh Amendment from forcing the State, under the *aegis* of the CZMA, to abandon the State's ownership of public trust lands as such ownership is represented by the requirement a Category B Assent.

(3) Under the Eleventh Amendment and related immunity, KeySpan's attempted invocation of Federal Consistency Certification jurisdiction over the Project should be, and is, limited by the requirement that KeySpan simultaneously obtain a license to use the water-covered portions of the site.

B. That the Court enter a preliminary injunction enjoining and restraining KeySpan and its respective officers, representatives, agents, servants, employees, attorneys and successors, and each of them, during the pendency of this action, from:

(1) seeking to enforce, whether directly or indirectly, all or any portion of the CZMA process without first allowing the State Coastal Resources Management Council to require KeySpan to apply for or obtain a Category B Assent to use the site.

(2) relying upon, claiming, or asserting a filing date of December 1 or December 31 or any date prior to the conclusion of this action, as the start date of the six-month period under the CZMA.

(3) allowing the six-month time period to run.

(4) Claiming any benefit from the running of the six-month time period.

C. That the Court deny all relief to KeySpan.

Respectfully submitted,

THE STATE OF RHODE ISLAND

for Defendants,
by their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael Rubin, (#3656)
Special Assistant Attorney General
150 South Main Street
Providence, R.I. 02903
Tel: (401) 274-4400 Ext. 2116
Fax: (401) 222-3016

Paul J. Roberti, (#4447)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2231
Fax: (401) 222-3016

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing was mailed to those listed below, on this 7th day of March, 2005.

Gregory L. Benik, Esq.
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

\\Attg5\Civil\M. Rubin\CASES\Keyspan\Pleadings KeySpan v. CRMC\Answer Counter-Claim 3-7-05 - Jim Lees' version for filing.doc