UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KEYSPAN LNG, L.P.,

Plaintiff

vs.

THE RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL; MICHAEL M. TIKOIAN, in his Capacity as Chairman of the Rhode Island Coastal Resources Management Council; JAN P. MALIK; PAUL E. LEMONT; LAURENCE W. EHRHARDT; THOMAS RICCI; DAVID ABEDON; JERRY SAHAGIAN; DANIEL DAPONTE; EILEEN S. NAUGHTON; V. SUSAN SOSNOWSKI; JOSPEH R. PAOLINO; K. JOSEPH SHEKARCHI; GERALD P. ZARRELLA; NEIL GRAY; RAYMOND C. COIA; and FREDERICK VINCENT in their Capacities as Members of the Rhode Island Coastal Resources Management Council,

Defendants

C.A. No.: 05-091 L

City of East Providence's Motion to Intervene

NOW COMES interested party City of East Providence (the "City"), by and through counsel, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and hereby moves this Court for an order permitting or allowing its intervention, and participation, in the above-entitled declaratory judgment action.

The City respectfully submits, and represents, that it is a necessary and indispensable party to this matter, which has an actual and significantly protectable interest that will be affected by any declaration by the Court in this case, and, further, that the City's interest or

7

stake in this matter cannot be adequately represented by any of the parties to the above-entitled action. Accordingly, the City must be permitted or allowed to intervene in this matter.

In support of the within motion, the City submits the accompanying memorandum.

Respectfully submitted,

City of East Providence
By its Attorneys,

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

William J. Conley, Jr. (#2149)
City Solicitor - City of East Providence
East Providence City Hall
145 Taunton Avenue
East Providence, RI 02914
Tel.: (401) 435-7523
Fax.: (401) 435-7585

Dated: March 10, 2005

## Certification

I hereby certify that on this 10th day of March, 2005, I served a true and accurate copy of the foregoing upon **Gregory L. Benik, Esq.**, Holland & Knight, LLP, One Financial Center, Suite 1800, Providence, Rhode Island, 02903; **Michael Rubin, Esq.** & **Paul J. Roberti, Esq.**, Rhode Island Department of Attorney General, 150 South Main Street, Providence, Rhode Island, 02903, by first-class, postage prepaid mail.

Monique Bowen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KEYSPAN LNG, L.P., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | C.A. No.: 05-091 L |
| | : | |
| THE RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL; MICHAEL M. TIKOIAN, in his Capacity as Chairman of the Rhode Island Coastal Resources Management Council; JAN P. MALIK; PAUL E. LEMONT; LAURENCE W. EHRHARDT; THOMAS RICCI; DAVID ABEDON; JERRY SAHAGIAN; DANIEL DAPONTE; EILEEN S. NAUGHTON; V. SUSAN SOSNOWSKI; JOSPEH R. PAOLINO; K. JOSEPH SHEKARCHI; GERALD P. ZARRELLA; NEIL GRAY; RAYMOND C. COIA; and FREDERICK VINCENT in their Capacities as Members of the Rhode Island Coastal Resources Management Council, | : | |
| | : | |
| Defendants | : | |

**Memorandum in Support of the City of East Providence's Motion to Intervene**

NOW COMES interested party City of East Providence (the "City"), by and through counsel, and hereby submits the within memorandum in support if its accompanying motion to intervene in the above-entitled declaratory judgment action.

The City submits, and represents, that it is a necessary and indispensable party to the instant matter insofar as it has an actual and significant protectable interest or stake that will be affected by any declaration in this case, and, further, that the City's interest or stake in this action cannot be adequately represented by any of the parties to the same. Accordingly, the City must be permitted or allowed to intervene in this matter pursuant to, and in accordance with, Rule 24 of the Federal Rules of Civil Procedure.

Pertinent Facts

On or about April 30, 2004, plaintiff KeySpan LNG, L.P. ("KeySpan") filed an application with the Federal Energy Regulatory Commission ("FERC") to abandon its existing liquefied natural gas ("LNG") facilities located in Providence, Rhode Island, and, further, to "upgrade" its current storage facility by converting the site to an LNG terminal capable of receiving marine deliveries of LNG, and augmenting the existing vaporization system (the "KeySpan LNG Facility Upgrade Project"). In addition, KeySpan's application also sought to convert and intensify the use of the present facility from a "peaking" facility to a "base load" facility, as well as increase the frequency with which it would receive LNG deliveries.[1]

Subsequently, Algonquin Gas Transmission Company ("Algonquin") also filed an application seeking FERC's authorization to construct a short pipeline to connect the to be "upgraded" LNG terminal facility directly to Algonquin's interstate pipeline system.[2]

In its April 30th application to FERC, KeySpan indicated that a Category B Assent was required in order for the KeySpan LNG Facility Upgrade Project to be approved, sited, and/or constructed. In fact, as of this date, KeySpan has never amended or otherwise modified its original April, 2004 filing with FERC.

Thereafter, in or about August, 2004, consistent with its FERC application, KeySpan filed what purported to be an Application for Category B Assent with the Rhode Island Coastal Resources Management Council ("CRMC"). The City intervened in the CRMC proceeding, and, further, requested a full hearing on KeySpan's Application for a Category B Assent.

---

[1] On or about May 19, 2004, the City timely intervened in the pending KeySpan application proceeding(s) docketed by FERC, more particularly known, and identified, as FERRC Docket Nos.: CP 04-223 and CP 04-293. As such, this Court should take notice that the City is recognized as an intervenor, and interested party, in the above FERC proceedings.

[2] As in the KeySpan application proceeding pending before FERC, the City also timely intervened, on or about July 6, 2004, in the Algonquin application proceeding before FERC otherwise known as FERC Docket No.: CP 04-358. Again, this Court should take notice that the City is an intervenor, and interested party, in the Algonquin FERC proceeding as well.

Subsequently, on December 1, 2004[3], one day after FERC issued its draft EIS, KeySpan unilaterally withdrew is Category B Assent application, and, further, opined to CRMC that all that was ultimately necessary was for CRMC to undertake, and complete, a "federal consistency review," without the necessity for a proceeding and/or hearing before CRMC regarding the specific issues to be determined in connection with applicable Rhode Island coastal and other environmental regulations. This unilateral action was taken notwithstanding that KeySpan's own application specifically and expressly indicated that a Category B Assent from CRMC was, in fact, necessary and required in order to advance the KeySpan LNG Facility Upgrade Project. At the same time, of its initiative, KeySpan purportedly submitted to, and invoked, CRMC's federal consistency certification procedure. The City also intervened in that proceeding, and, further, again requested a full, public hearing thereon.

Prior to any response from CRMC relative to KeySpan's unilateral actions, the Rhode Island Statewide Planning Program ("SPP"), Rhode Island's "state point of contact" with FERC, on or about January 21, 2005, determined the KeySpan LNG Facility Upgrade Project to be at variance, and inconsistent, with the Rhode Island State Guide Plan, which included the approved comprehensive plans of Rhode Island's cities and towns, including the City's. In its findings, the SPP expressly and specifically opined that the proposed KeySpan LNG Facility Upgrade Project required a Category B Assent and a federal consistency determination from CRMC.

On or about January 31, 2005, CRMC responded to KeySpan's unilateral determination, and concluded that, pursuant to applicable law, KeySpan was required to "(i) obtain a federal consistency determination, and (ii) comply with the Category B Assent process, both pursuant to the federal Coastal Zone Management Act ("CZMA")." In making this determination, CRMC relied upon governing federal and state laws and regulations, including but not limited to Rhode Island state and common law relating to the public trust doctrine.

---

[3] On November 30, 2004, FERRC issued its draft Environmental Impact Statement ("EIS") relative to the proposed KeySpan LNG Facility Upgrade Project, which, in part, relied upon the information and representations made by KeySpan in its April 30th filing. The City commented to FERC upon the draft EIS as an intervenor in the KeySpan FERC proceeding(s).

CRMC determined that KeySpan's required Category B Assent application was not presently before FERC, and, as such, KeySpan's December 1[st] filing was incomplete, which meant that CRMC could not proceed in its review of the proposed KeySpan LNG Facility Upgrade Project until such time as KeySpan filed its Category B Assent application and supplemented its purported federal consistency certification.

Rather than acceding to the authority of CRMC, KeySpan instead initiated the instant declaratory judgment action seeking a declaration of this Court that CRMC has no jurisdiction over the KeySpan LNG Facility Upgrade Project, except for a federal consistency determination, as well as a declaration that any CRMC requirement that KeySpan apply for a Category B Assent is illegal, null and void insofar as the same is preempted by the federal Natural Gas Act ("NGA") and applicable FERC regulations. In addition, KeySpan seeks a preliminary and permanent injunction restraining CRMC from seeking to enforce any portion of Rhode Island's Coastal Resources Management Program ("CRMP") that would require KeySpan to apply for a Category B Assent.

**Argument**

Rule 24(a) of the Federal Rules of Civil Procedure, which allows for intervention in proceedings as a matter of right, provides, in pertinent part:

> Upon timely application anyone *shall* be permitted to intervene in an action: * * * or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Similarly, Rule 24(b), which allows for permissive introduction, states, in relevant portion:

> Upon timely application anyone *may* be permitted to intervene in an action: * * * or (2) when an applicant's claim or defense and the main action have a question or law or fact in common.

In the instant action, whether as a matter of right, or by permission of the Court, the City should be allowed to intervene in the present case.

Intervention as a matter of right

A party that desires to intervene in a civil action under Rule 24(a)(2), generally, must satisfy four (4) conjunctive prerequisites: "(1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest." *Public Service Company of New Hampshire v. Patch*, 136 F. 3d 197, 204 (1st Cir. 1998). *See Conservation Law Foundation v. Mosbacher*, 966 F. 2d 39, 41 (1st Cir. 1992).

The application of this framework to the factual circumstances of an individual case requires a holistic, rather than reductionist, approach. *See International Paper Co. v. Town of Jay*, 887 F. 2d 338, 344 (1st Cir. 1989). The inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they "be read not discretely, but together," always in keeping with a common sense view of the overall litigation. *Public Service Company of New Hampshire*, at 204, *citing United States v. Hooker Chems. & Plastics Corp.*, 749 F. 2d 968, 983 (2nd Cir. 1984).

To justify intervention as of right, interests must be "significantly protectable." *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F. 2d 39, 41 (1st Cir. 1992), *citing Donaldson v. United States*, 400 U.S. 517, 531 (1971). The First Circuit has emphasized that "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene," while reiterating "that the intervenor's claims must be a 'sufficiently close relationship' to the dispute between the original litigants." *Conservation Law Found.*, at 42, *citing Travelers Indem. Co. v. Dingwell*, 884 F. 2d 629, 637 (1st Cir. 1989).

Additionally, an intervenor need only show that representation may be inadequate, not that it is inadequate. *Conservation Law Found.*, at 44, *citing Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972).

In the instant action, the City is entitled to intervention in this proceeding as a matter of right.

In July, 2003, almost a year in advance of KeySpan filing its application with FERC, the Rhode Island General Assembly, by way of special enabling legislation, established the City's Waterfront Special Development District ("WSDD"), and, in so doing, authorized the creation of the WSDD Commission (the "Commission"). The General Assembly defined the purpose of the WSDD as being to design and form state-local-private sector partnerships to plan, implement, administer, and oversee the development of the City's WSDD, and to authorize, provide for, and facilitate the consolidated exercise of development, and redevelopment, powers existing at the state and local levels. The WSDD legislation empowered the Commission with all of the rights and remedies that may be necessary to carry out the purpose and intent of the WSDD. Thereafter, the City fully staffed the Commission, which immediately embarked on the planning and development of the City's waterfront.

In December, 2003, the City authored, and adopted, the "Waterfront Special Development District Plan" (the "Plan"), and, further, incorporated the same as an element of the City's Comprehensive Plan, as an official development plan of the City. Subsequently, in December, 2004, the SPP approved the City's Comprehensive Plan, which included the Plan, and incorporated the same into, and as part of, the State Guide Plan.

In addition, the City re-zoned all of the properties located within the WSDD. What was once a blighted, heavy industrial area has now been re-zoned and/or re-classified to include the following development sectors: retail/hospitality (hotel, restaurant and entertainment); light industrial; office/retail; mixed use (retail, high density residential and office); residential (medium density); residential/limited commercial (high density residential); open space/public. The WSDD *Zoning Ordinance and Zoning Map Amendments* were approved by the East Providence City Council in March, 2004.

Further, the Plan was specifically promulgated in conjunction with the City of Providence's "New Cities" initiative, which was the City of Providence's endeavor to enact a plan to re-develop and/or re-vitalize its own waterfront, which is separated from the WSDD only by a narrow navigational channel in Narragansett Bay, and located only slightly more than .25 of a mile from the proposed site of the KeySpan LNG terminal expansion. Both the City and the City of Providence launched their respective visions and re-development plans for the

renewal of their waterfront districts as part of a coordinated effort, and, further, did so considerably in advance of KeySpan's application to FERC in April, 2004.

The City approved its first project under the new waterfront zoning scheme in September, 2004. The Plan envisions the creation of over 2 million square feet of commercial space and 2,500 new residential housing units, within an anticipated $2 billion in construction. Further, implementation of the development along the waterfront as contemplated by the Plan will generate a substantial number of new employment opportunities, potentially adding between 3,000 and 4,000 jobs to Rhode Island's economy.

In addition to the re-classification of the property comprising the WSDD, there are a number of transportation improvements are underway in furtherance of the Plan, the first of which having been scheduled to commence by Rhode Island Department of Transportation ("RIDOT") in early Spring, 2005. Even more, an environmental assessment for waterfront access improvements is currently ongoing, and is being conducted by the City's consultant, Gordon Archibald, Inc.

At this time, there are physical construction or development projects that are now underway, and ongoing. For example, a development project is under construction in the Philipsdale Sub-District of the WSDD, which consists of fifty-four (54) condominium units, and a four thousand (4,000) square foot office expansion.

Permitting for an additional three (3) projects is also ongoing, and expected to be completed at varying points in 2005. The properties on which these projects are to be situated comprise approximately seventy (70) acres of the WSDD, and will provide for approximately nine hundred (900) new housing units.

Notwithstanding the foregoing, all of which KeySpan was fully aware of, KeySpan represented in its April, 2004 application, and its subsequent July, 2004 responses to certain FERC data requests, that "the proposed terminal is consistent with existing with existing land uses present along the industrial waterfront on which it is located, and the water areas in the vicinity of the Project Site that are classified by Coastal Resources Management Council as industrial waterfronts and navigational channels. Thus, KLNG [KeySpan] anticipates the Project would not cause conflicts with, or significant adverse impacts to, existing land uses,

area recreation or aesthetic conditions, including the City of East Providence." Even more, KeySpan's application to FERC represented that there is "[N]o significant new residential or commercial development is known to be planned for the potential impact area." In so doing, KeySpan completely misrepresented to FERC the well-documented and well-settled history, and existence, of the City's WSDD.

In Rhode Island, once a community's comprehensive plan is adopted or amended, the State Guide Plan is therefore amended to incorporate that comprehensive plan, and then all state projects and all municipal land use decisions must conform with the State Guide. *See R.I. Gen. General Laws §§45-22.2-10 and 45-22.2-13*. As such, the proposal for the KeySpan LNG Facility Upgrade Project must be consistent with the State Guide Plan and the City's Comprehensive Plan, respectively.

Given that the proposed KeySpan LNG Facility Upgrade Project is directly at odds with the City's Comprehensive Plan, as modified in December, 2003, and accepted approved by the SPP in December, 2004, including the Plan, the "consistency doctrine", as promulgated by R.I. Gen. Laws §§ 45-22.2-10 and 45-22.2-13, required the SPP to reject the proposed KeySpan terminal expansion as being inconsistent with the State Guide Plan[4], which the SPP did on January 21st.

Insofar as the proposed KeySpan LNG Facility Upgrade Project is inconsistent with the Plan, the City's Comprehensive Plan, and the State Guide Plan, respectively, the City has a vested interest or stake in said project because it is a to be affected community, particularly given the project's impact(s) on the development of WSDD. Even more, the City, per KeySpan's responses to certain FERC data requests, is being asked and/or required to share in the safety and security costs associated with the design and implementation of a statewide emergency response plan, as well as relative to regular marine deliveries of LNG to the

[4] The State Guide Plan is comprised of functional elements or strategic plans dealing with land use; physical development and environmental concerns; economic development; housing production; energy supply, access, use and conversion; human services; and other factors necessary to accomplish the objectives established by the SPP. These strategic plans *must* be internally consistent in its policies, forecasts, and standards, and include the following elements: (1) goals and policy statements; (2) land use element; (3) housing element; (4) economic development element; (5) natural and cultural resources element; (6) services and facilities element; (7) open space and recreational element; (8) circulation element; and (9) implementation program.

proposed marine terminal site, and, further, being charged with safeguarding its own citizenry and waterfront as a result of the heightened risk associated with the same.

Per the requirements articulated by KeySpan in its own application, which stands unrevised and uncontradicted, a Category B Assent is necessary and critical to the approval of the KeySpan LNG Facility Upgrade Project. Further, CRMC has determined the same to be necessary.

KeySpan now seeks to obviate this procedure and act contrary to its own representations and assertions to FERC. As such, the City has a necessary vested interest or stake in any contingency and/or criteria related to the approval of the KeySpan LNG Facility Upgrade Project, particularly given the impact(s) the same will have upon the City. As such, the City, as a to be affected community, is entitled to intervene in this case a matter of right.

There is no question that the City's application for intervention is timely given that the answer period in the instant litigation has yet to conclude. Additionally, the City has a demonstrated interest or stake related to the KeySpan LNG Facility Upgrade Project by virtue of its impact(s) upon the City relative to the WSDD and/or the City's finances. Should this Court issue a declaration regarding any of the elements or required procedures with respect to the approval(s) related to the proposed project the City must be allowed to participate, especially given that the City has already been recognized as an interested party and intervener at the FERC, SPP, and CRMC levels. Additionally, the status or progress of the KeySpan LNG Facility Upgrade Project, and any declarations of this Court, without affording the City any opportunity to be heard thereon, will create a practical impairment or impediment to the City's ability to protect its interest or stake regarding the same. Finally, none of the parties' to the instant litigation may adequately represent the interests or stake of the City in this matter. In particular, KeySpan has taken a position directly at odds with the City, while the State of Rhode Island is seeking an interpretation of its regulations, as well as to preserve and protect its jurisdiction with respect to the siting and/or development of projects such as the instant one.

Given that the City has a demonstrated significantly protectable interest, which bears a sufficiently close relationship to the original dispute by and between the parties in this matter a

common sense approach to the City's instant motion requires that it be allowed or permitted to intervene in the instant proceedings.

Permissive intervention

A refusal to find a right under Rule 24(a) still leaves open the possibility in an appropriate case of permissive intervention under Rule 24(b). *Travelers Indemnity Company v. Dingwell*, 884 F. 2d 629, 640 (1st Cir. 1989). This Court enjoys broad discretion in making determinations regarding permissive intervention under Rule 24(b)(2). *Id.*

In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Flynn v. Hubbard*, 782 F. 2d 1084, 1090 (1st Cir. 1986).

In addition to the City's arguments that it should be permitted to intervene in the instant proceedings as a matter of right, pursuant to Rule 24(a), the City also avers that it is entitled to permissive intervention under Rule 24(b).

Clearly, the City has made the requisite showing as otherwise required by the applicable Rule of Civil Procedure. Simply stated, the City's interest or stake in the underlying matter, the proposed KeySpan LNG Facility Upgrade Project, has a commonality to the issues, law, and/or facts being presented to this Court for determination. Indeed, the City's significantly protectable interest is inextricably intertwined with the relief sought by the parties' to the present case, as well as the underlying proposed KeySpan LNG Facility Upgrade Project.

As such, in light of the fact that the City's interest may not be adequately protected by any other party to the litigation, given that the within motion is timely, and the requested intervention will neither unduly delay or otherwise prejudice the adjudication of the rights of the original parties to the litigation, the City should be permitted to intervene in this case.

**Conclusion**

FOR THE FOREGOING REASONS, the City respectfully prays that it be permitted or allowed to intervene in the above-entitled declaratory judgment action, and that the City be awarded such other further relief as this Court may deem fair, just and meet.

Respectfully submitted,

City of East Providence

By its Attorneys,

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferric Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

William J. Conley, Jr. (#2149)
City Solicitor - City of East Providence
East Providence City Hall
145 Taunton Avenue
East Providence, RI 02914
Tel: (401) 435-7523
Fax: (401) 435-7585

Dated: March 10, 2005

**Certification**

I hereby certify that on this 10th day of March, 2005, I served a true and accurate copy of the foregoing upon **Gregory L. Benik, Esq.**, Holland & Knight, LLP, One Financial Center, Suite 1800, Providence, Rhode Island, 02903; **Michael Rubin, Esq. & Paul J. Roberti, Esq.**, Rhode Island Department of Attorney General, 150 South Main Street, Providence, Rhode Island, 02903, by first-class, postage prepaid mail.

Monique Bower