**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, L.P.** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO. 05-091L** |
| | ) | |
| **RHODE ISLAND COASTAL** | ) | |
| **RESOURCES MANAGEMENT COUNCIL;[1] *et al*** | ) | |

**RHODE ISLAND'S MOTION FOR TEMPORARY RESTRAINING ORDER**

The State of Rhode Island hereby moves (with support from the accompanying Memorandum, which includes the Affidavit of the Director of CRMC) for the following relief:

That the Court enter a Temporary Restraining Order enjoining and restraining KeySpan from:

(1) relying upon, claiming, or asserting a filing date of December 1, 2004, or December 31, 2004, or any date prior to the conclusion of this action, as the start date of the six-month period under the CZMA.

(2) claiming any benefit from the running of the six-month CZMA Consistency Review time period.

Respectfully submitted,
for Defendants,
ATTORNEY GENERAL PATRICK C. LYNCH

Michael Rubin, (#3656)
Special Assistant Attorney General
150 So. Main St., Prov, R.I. 02903
Tel: (401) 274-4400 Ext. 2116

Paul J. Roberti, (#4447)
Assistant Attorney General
150 So. Main St., Prov, R.I. 02903
Tel: (401) 274-4400 Ext. 2231

Brian A. Goldman, Esq., (# 3940), Counsel for CRMC
681 Smith Street, Prov, R.I. 02903
Tel: (401) 521-4100

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing was ~~mailed~~ handed to Gregory Benik, Holland & Knight, 1 Financial Plaza, Ste. 1800, Prov., RI 02903, on this 25 March, 2005.

---

[1] The naming of the Coastal Resources Management Council is tantamount to naming the State.

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, L.P.** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO. 05-091L** |
| | ) | |
| **RHODE ISLAND COASTAL** | ) | |
| **RESOURCES MANAGEMENT COUNCIL;**[1] ***et al*** | ) | |

**THE STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Unless this Court intervenes within a matter of days, the following irreparable harms will ensue:

1. Deprivation of a meaningful opportunity to conduct substantive review; this is due to the fact that KeySpan mis-stated the commencement date of the contended-for 6-month review period and did not even attempt to correct its mis-statement until only three-and-a-half left to review a complicated project proposal;
2. The massive mobilization of CRMC resources, including staff time and effort, as well as volunteer Council-member time and effort, to hold a set of hearings which may well prove invalid;
3. The concomitant diversion of those resources from permitting activity and application processing for worthy projects whose claim on the jurisdiction and time of the CRMC is on sound footing;
4. The expenditure of the time and energy of the interested citizenry in a hearing process of dubious validity;
5. The de-coupling of reviews and decisions which, under the public policy of the State, are to be parallel, joint, intertwined and inter-dependent;
6. The frustration of useful State-Federal coordination; and
7. The symbolic harm of an affront to the dignity of the State.

---

[1] The Rhode Island Coastal Resources Management Council has no legal existence separate and apart from the State of Rhode Island and has no distinct capacity to sue or be sued.

And all of this harm will take place for the sake of a set of hearings which, as even KeySpan partly admits, are clouded as to their legitimacy. This cloud is created by:

A. The Eleventh Amendment bar to KeySpan's invocation of the hearing process in the manner that KeySpan purported to do so;

B. The bar of the Public Trust Doctrine to KeySpan's invocation of the hearing process in the manner that KeySpan purported to do so;

C. The bar of the rule that an applicant cannot proceed with an application for a project on land unowned by the applicant or its privies;

D. The bar of the CRMP and P.L. 2000 c. 314 to KeySpan's invocation of the hearing process in the manner that KeySpan purported to do so;

E. The estoppel created by KeySpan's prior resort to a different hearing process (which the State deems proper);

F. The deficiencies timely noted by the CRMC; and

G. The estoppel created by KeySpan's reference to a December 31, 2004, start date.

## ARGUMENT

### I. IMMEDIATE IRREPARABLE HARM IS IMPENDING

Each of the enumerated harms are documented by the appended affidavit save the last. The last is the affront to the dignity of the State. The affront to the dignity of the State is manifest from the very posture the State finds itself in: The State is being disabled by a federal process from asserting an incident of sovereignty. This has already been briefed in the State's Preliminary Injunction Memorandum.

The other harms are so amply illuminated by the Director's affidavit as to require no further exposition here.

### II. THERE ARE NO COUNTER-VAILING EQUITIES

By the very bringing of this Declaratory Judgment Action, KeySpan itself is asserting that the pending administrative process (sought to be stayed) is clouded by doubt and uncertainty.

## III. THERE IS AN OVER WHELMING PROBABILITY THE STATE WILL PREVAIL ON THE MERITS BECAUSE KEYSPAN'S ANTICIPATED ARMY CORPS PERMIT DOES NOT AFFECT THE STATE'S OWNERSHIP OR RIGHTS

KeySpan claim of "pre-emption" rests on a claim of paramount power. But, as already demonstrated in the Preliminary Injunction Memorandum, the only conceivably relevant power paramount to a State's ownership of public trust lands is the Federal Navigational Servitude. But that Servitude will not be exercise by, or on behalf, of KeySpan. At most, KeySpan will obtain an Army Corps permit which will not delegate the servitude and merely express toleration. This is explained immediately.

With the adoption of Section 10 of the River and Harbor Act by Congress in 1899 (the section under which KeySpan would be permitted), the Courts immediately confirmed the obvious fact that the powers over navigable waters now being exercised by the federal government thereunder were *not* to supercede the existing powers of the states over submerged lands; structures proposed for navigable waters required the express approval of *both* the state and federal governments:

> Whether Congress may, against or without the expressed will of a state, give affirmative authority to private parties to erect structures in such waters, it is not necessary in this case to decide. It is only necessary to say that the act of 1899 does **not** manifest the purpose of Congress to go to that extent under the power to regulate foreign and interstate commerce and thereby to supersede the original authority of the states. The effect of that act, reasonably interpreted, is to make the erection of a structure in a navigable river, within the limits of a state, **depend upon the concurrent or joint assent of both the national government and the state government**. The Secretary of War, acting under the authority conferred by Congress, may assent to the erection by private parties of such a structure. Without such assent the structure cannot be erected by them. But under existing legislation they must, before proceeding under such an authority, **obtain also the assent of the state** acting by its constituted agencies.

Cummings v. City of Chicago, 188 U.S. 410, 431 (1903) (emphasis added). The Cummings opinion also distinguished between the Corps' possessory powers over waterways and its mere

toleration of private works. The Justices clarified that Section 10 in no way releases prospective builders from abiding by the regulations of the state in which the navigable waters in question are located:

> The general proposition upon which the plaintiffs base their right to relief is that the United States, by the acts of Congress referred to, and by what has been done under those acts, has taken 'possession' of Calumet river, and, so far as the erection in that river of structures such as bridges, docks, piers, and the like is concerned, no jurisdiction or authority whatever remains with the local authorities. In a sense, but only in a limited sense, the United States has taken possession of Calumet river, by improving it, by causing it to be surveyed, and by establishing lines beyond which no dock or other structure shall be erected in the river without the approval or consent of the Secretary of War, to whom has been committed the determination of such questions. **But Congress has not passed any act under which parties, having simply the consent of the Secretary, may erect structures in Calumet river without reference to the wishes of the state of Illinois on the subject.**

Cummings v. City of Chicago, 188 U.S. 410, 426-27 (1903) (emphasis added).

In a later case involving construction in a navigable waterway, the Court recognized that the power of state governments was subordinate to the federal government's direct *proprietary* interest, but also took care to highlight the independence of the states from the federal government in *regulating* private activities:

> [O]ne exercise of the power by either does not preclude another exercise by either . . ..

Greenleaf-Johnson Lumber Co. v. Garrison, 237 U.S. 251, 262 (1915). For clarification, the passage could be restated as follows: Regulation by Congress does not preclude regulation by a state or *vice-versa*.

Thus, following Cummings, lower courts have made short work of the notion that Section 10 federal permits for building in navigable waters can supercede the public trust property rights vested in states:

> Plaintiff relies solely upon the dredging permit issued by the Corps of Engineers as furnishing this 'property right'. It claims that this permit conferred a right of use in the nature of an easement or license upon the permittee. But the language of the permit clearly indicates that it does not pass any "property rights either in real estate or material, or any exclusive privileges"; the purpose of the permit, as stated therein, is merely to safeguard the public right of navigation – a right which is protected by the federal government. It does not purport to pass any property interest or privilege.
>
> Indeed, the federal government had no property interest in the harbor bottom which it could convey, since title to the bottom is clearly vested in the Commonwealth of Virginia.

Norfolk Dredging Co. v. Radcliff Materials Inc., 264 F. Supp 399, 402 (E.D. Va. 1967) (citations omitted). One particularly thoughtful discussion follows:

> [The Submerged Lands Act of 1953, 43 U.S.C., section 1314] specifically confirms the state's title to submerged tidelands. The state holds this title not by virtue of a federal grant, but as an incident of the transfer to the state of local sovereignty at the time of admission to the Union. The state's title is subject only to the paramount power of the United States to control such waters for the purpose of navigation in interstate and foreign commerce.
>
> [Defendant] argues that the term 'paramount' indicates that the United States retained title to the lands as well as the navigable waters. In view of the express language of the statute indicating that the paramount right applies only to the regulation and control of the lands and waters for constitutional purposes of commerce and navigation but does not include proprietary rights of ownership or the use and development of the lands, this contention is entirely without merit.

County of Marin v. Roberts, 84 Cal. Rptr. 425, 4 Cal. App.3d 480, 485-86, (1970) (internal citations omitted). *See also* Carrithers v. Terramar Beach Community Improvement Assoc., 630 S.W.2d 648, 650 (Tex. App. 1981) ("[t]he grant of a permit by the U. S. Army Corps of Engineers to the defendants did not bestow upon them any property rights with respect to the

submerged lands in the turning basin") *rvs'd on other grounds* 645 S.W.2d 772 (Tex. 1983); Pierson v Coffey, 706 S.W.2d 409, 413 (Ky. App. 1985) ("[t]he requirement that a person must obtain a permit before he or she may place obstructions in the river does not confer any interest in riparian property upon the recipient of the permit"); Cobb v. Lincoln Park Com'rs, 202 Ill. 427, 439-40 (1903) ("[w]hen harbor lines are not established, or beyond established harbor lines, the permission of the general government to build a wharf in navigable waters is necessary. But such permission is not given to override the rights of the owners of the submerged lands).

Indeed, one must look no further than the language of the Army Corps of Engineers' own regulations for the language central to each of the preceding rulings: "Authorization of work or structures by the Department of the Army does not convey a property right nor authorize any injury of property or invasion of other rights." 33 C.F.R., § 320.4(g) (1980). In fact, the Corps go so far as to explicitly deny the conveyance of property rights in the language of the permit itself:

> a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.
>
> b. This permit does not grant any property rights or exclusive privileges.
>
> c. This permit does not authorize any injury to the property or rights of others.

Permit Form and Special Conditions, 33 CFR 325, App. A.

In sum, a Natural Gas Act Certificate might pre-empt State regulation but it has no bearing on State ownership. Turning to the other permit KeySpan hopes for, a § 10 Army Corps permit, it does relate to property rights. But it merely tolerates an intrusion on one sovereign's property rights. It does not authorize an intrusion onto those of the other sovereign. KeySpan's position on so-called pre-emption is hopeless.

## CONCLUSION

To prevent the harms recited in the attached affidavit, and to prevent an imminent violation of sovereignty, should be granted.

Respectfully submitted,
THE STATE OF RHODE ISLAND
for Defendants,
by their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael Rubin, (#3656)
Special Assistant Attorney General
150 South Main Street
Providence, R.I. 02903
Tel: (401) 274-4400 Ext. 2116

Paul Roberti /mr
Paul J. Roberti, (#4447)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2231

Brian A. Goldman /MR
Brian A. Goldman, Esq., (#3940)
Counsel for CRMC
681 Smith Street
Providence, RI 02908
Tel: (401) 521-4100

## CERTIFICATION

I, the undersigned, hereby certify that a copy of the foregoing was handed to Gregory Benik, Holland & Knight, One Financial Plaza, Suite 1800, Providence, RI 02903, on this 25th day of March, 2005.

\\Attg5\Civil\M. Rubin\CASES\Keyspan\KeySpan v. CRMC\Pleadings KeySpan v. CRMC\Memorandum in Support of Motion for TRO..doc