**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, L.P.** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-091-S** |
| | ) | |
| **RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*** | ) | |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO STATE OF RHODE ISLAND'S MOTION FOR SUBSTITUTION OF PARTY-DEFENDANT

Respectfully submitted,

**KEYSPAN LNG, L.P.**
By its Attorneys,

Gregory L. Benik, Esq. (#1515)
John P. Walsh (#6709)
HOLLAND & KNIGHT LLP
One Financial Plaza, Suite 1800
Providence, RI 02903
Telephone: (401) 751-8500
Facsimile: (401) 553-6850

April 18, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................iv

I. INTRODUCTION ....................1

II. FEDERAL LAW PREEMPTS THE CATEGORY B ASSENT ....................2

A. KLNG's Application Under the CZMA Was Properly Filed And The Review Period Commenced On December 1,2 004 ....................2

B. THE CRMC DOES NOT HAVE THE POWER TO REQUIRE A CATEGORY B ASSENT PROCESS AS PART OF ITS CZMA CERTIFICATION, AND, THUS, KLNG'S FAILURE TO FILE A CATEGORY B ASSENT APPLICATION WAS NOT A LEGAL DEFICIENCY ....................3

1. The Category B Assent Process Is Preempted By Federal Law ....................4

a. FERC Has Exclusive Jurisdiction Over The Transportation And Sale Of Natural Gas For Resale In Interstate And Foreign Commerce And The Facilities Associated Therewith ....................4

b. The CRMC Is Preempted From Requiring A Category B Assent Process ....................5

c. KLNG Would Be Harmed If Forced Into A Duplicative Process ....................7

2. The CZMA Does Not Create A Foundation For Regulation Of The KLNG Project By The CRMC Under State Law ....................8

a. The CZMA Consistency Certification Process Makes No Provision For Independent State Permit Requirements ....................9

b. The Court Should Reject The CRMC's Attempt To Undermine The Federal CZMA Consistency Review Process ....................10

c. CRMC's Claim Of Conditional Consent To

Participation In The CZMA Is Contrary To The CZMA And Not Supported By The State's CRMP ..............11

III. THE CRMC CANNOT BOOTSTRAP ITSELF INTO STATE REGULATION OF THE KLNG PROJECT BY CLAIMING THAT IT OWNS SUBSEA LANDS NEEDED FOR THE KLNG PROJECT ..............13

A. The State's Rights n And Control Over Lands Under The Providence River Are Subject To The Federal Government's Paramount Rights Therein ..............14

B. The State's Ability To Protect The Public Trust Is Not Harmed Because The Federal Government Will Independently Determine That Use Of The Subsea Lands Is In The Public Interest ..............16

IV. CONCLUSION ..............17

# TABLE OF AUTHORITIES

## FEDERAL CASES

Algonquin LNG v. Loqa, 79 F.Supp.2d. 49 (D.R.I. 2000) ....................4, 5, 6, 7, 8
ANR Pipeline Co. v. Iowa State Commerce Commission, 828 F.2d 465 (8th Cir. 1987) ....................5
Douglas v. Seacoast Products, 431 U.S. 265 (1977) ....................15
Granite Rock Co. v. California Coastal Comm'n, 590 F. Supp. 1361 (N.D. Cal 1984) *rev'd on other grounds*, 768 F.2d 1077 (9th Cir. 1985); *rev'd on other grounds*, 480 U.S. 572 (1987) ....................12, 13
Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997) ....................14
Kern River Gas Transm. V. Clark County, Nev., 757 F. Supp. 1110 (D. Nev. 1990) ....................5
Mountain Rhythm Resources v. FERC, 302 F.3d 958 (9th Cir. 2002) ....................10, 12
National Fuel Gas Supply Corp. v. Pub. Serv. Comm'n of NY, 894 F.2d 517 (2d Cir.), *cert. denied*, 497 U.S. 1004 (1990) ....................5, 6, 7, 16
NE Hub Partners, L.P. v. CNG Transm'n Corp., 239 F.3d 333 (3d Cir. 2001) ....................8
No. Tanks Inc. v. Pub. Util. Comm'n, 697 A.2d 1313 (Me. 1997) ....................5
Northern Border Pipeline Co. v. Jackson County, 512 F. Supp. 1261, (D. Minn. 1981) ....................5
Northern Natural Gas Co. v. Iowa Utils. Bd., 377 F.3d 817 (8th Cir. 2004) ....................5, 7
Sayles Hydro Ass'n v. Maughan, 985 F.2d 451 (9th Cir. 1993) ....................8
Schneidewind v. ANR Pipeline Co., 485 U.S. 293 (1988) ....................4, 5, 7, 16
Shively v. Bowlby, 152 U.S. 1 (1894) ....................14
Thatcher v. Tennessee Gas Transm. Co., 180 F.2d 644 (5th Cir. 1950), *cert. denied*, 340 U.S. 829 (1950) ....................15
United States v. Alaska, 521 U.S. 1 (1997) ....................15
United States v. California, 457 U.S. 273 (1982). ....................15
United States v. Louisiana, 470 U.S. 93 (1985) ....................15
Zabel v. Tabb, 430 F.2d 199, 206 (5th Cir. 1970) ....................15

## STATE CASES

Greater Providence Chamber of Commerce v. Rhode Island, 657 A.2d 1038 (R.I. 1995) ....................14

## FEDERAL STATUTES

15 C.F.R. §§930.1-930.157 ....................2
15 C.F.R. §930.60(a)(3) ....................2
15 C.F.R. §930.60(a) ....................2
15 C.F.R. §930.60(a)(1) ....................2, 3

15 C.F.R. §930.63(a) .......... 9
15 C.F.R. §930.63(b) .......... 9
15 C.F.R. §930.120 .......... 9
15 C.F.R. §§ 930.58, 930.63(c) .......... 9
15 U.S.C. §§717 *et seq.* .......... 4, 16
16 U.S.C. §1456(c)(3)(A) .......... 2, 11
42 U.S.C. §§4321 *et seq* .......... 6
43 U.S.C. §1311(a) .......... 14, 15
Submerged Lands Act, 43 U.S.C. §1314(a) .......... 14, 15
49 U.S.C. §§ 60101 *et seq* .......... 4

## OTHER AUTHORITIES

*Freeport LNG Dev., L.P.*, 107 FERC ¶ 61,278 (2004) .......... 16
*Iroquois Gas Transm'n. Sys., L.P.*, 59 FERC ¶ 61,094 (1992) .......... 7, 17
*Islander East Pipeline Co.*, 102 FERC ¶ 61,054 (2003) .......... 7
*Sabine Pass LNG, L.P.*, 109 FERC ¶ 61,324 (2004) .......... 16
*Sound Energy Solutions*, 106 FERC ¶ 61,279 (2004) .......... 5

# 2778577_v1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, L.P.** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-091-S** |
| | ) | |
| **RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, *et al.*** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO STATE OF RHODE ISLAND'S MOTION FOR SUBSTITUTION OF PARTY-DEFENDANT**

## I. INTRODUCTION

This case presents two issues. First, does the Rhode Island Coastal Resources Management Council ("CRMC") have the power to require KeySpan LNG, L.P. ("KLNG") to submit to the State's Category B Assent process to obtain CRMC review of its Coastal Zone Management Act ("CZMA") consistency certification ("CZMA Consistency Certification")? KLNG submits that it does not, because (A) KLNG's CZMA Consistency Certification was properly filed and legally complete on December 1, 2004; (B) the Category B Assent process is preempted by federal law; and (C) the CZMA does not create a foundation for the regulation of KLNG under state law. Second, does the State's ownership of submerged lands require that a Category B Assent application be filed before the CZMA consistency review can begin? KLNG submits that it does not, because the State's ownership of trust lands is subject to a paramount federal interest and is not an independent basis for the application of state law. [1]

---

[1] A third issue concerns whether this action against the CRMC and its members in their official capacity is properly before this Court. The Rhode Island Attorney General ("Attorney General") filed a motion to substitute the State as the defendant, which motion KLNG opposes. KLNG hereby incorporates by reference its response to the Attorney General's motion, filed in this docket on March 18, 2005, as its argument on this issue. KLNG refers herein to the CRMC and its members as the defendant in this matter.

## II. Federal Law Preempts The Category B Assent Process

The CZMA, its progeny and implementing regulations ("CZMA Regulations"),[2] provide the clear and detailed means by which the state and federal governments conduct concurrent reviews of federally authorized projects in and around the coastal zone. State review of a project begins when the consistency certification is filed, unless the certification is deficient, and must be completed within six months. 16 U.S.C. § 1456(c)(3)(A); 15 C.F.R. § 930.60(a). The state must give notice of any asserted deficiency within 30 days. 15 C.F.R. § 930.60(a)(1). States and applicants may mutually agree to vary these deadlines, if that agreement is in writing and is provided to the permitting agency. 15 C.F.R. § 930.60(a)(3).

Here, the parties have stipulated that the CRMC will complete its review of KLNG's CZMA Consistency Certification by the later of October 1, 2005, or thirty days after the Court's decision herein. However, it remains KLNG's position that its CZMA Consistency Certification was properly and completely filed and the review period commenced on December 1, 2004. More importantly, the Category B process is preempted by federal law, and the CRMC may not use the Category B Assent process as a trigger for CZMA review, for the reasons set forth below.

### A. KLNG's Application Under The CZMA Was Properly Filed And The Review Period Commenced On December 1, 2004

KLNG's CZMA Consistency Certification was filed with the CRMC on December 1, 2004 and, under the CZMA regulations, the CRMC was required to notify KLNG of any deficiencies by December 31, 2004.[3] The CRMC's January 31, 2005 letter, asserting that KLNG's application was incomplete because KLNG had not filed a Category B Assent

---

2 The CZMA Regulations are located at 15 C.F.R. §§ 930.1 – 930.157.

3 See 15 C.F.R. 930.60(a)(1).

application, was not provided to KLNG within the 30-day objection period.[4] KLNG's December 1, 2004 transmittal letter was not an agreement to extend the commencement of the 30-day period until December 31, 2004, because (a) the reference to December 31, 2004 was a typographical error[5] and (b) the transmittal letter was not a written agreement signed by the applicant and the agency to extend the time period. Finally, the CRMC did not notify KLNG of the asserted deficiency until February 2, 2005 (the date on which KLNG received the letter), a date which is clearly outside even a 30-day window commencing on December 31, 2004.[6] Accordingly, the CZMA review period commenced on December 1, 2004. As noted above, the review period was extended to the later of October 1, 2005 or 30 days from the Court's decision herein by stipulation of the parties.

### B. The CRMC Does Not Have The Power To Require A Category B Assent Process As Part Of Its CZMA Certification, And, Thus, KLNG's Failure To File A Category B Assent Application Was Not A Legal Deficiency

The CRMC's position that a Category B Assent process is required as a prerequisite for CZMA review[7] is erroneous because: (1) that process is preempted by the Natural Gas Act

---

4 KLNG did file an application under the Category B Assent process on August 20, 2004, based on the understanding that such an application was a procedural step under the State Coastal Management Plan to trigger the CZMA process. Despite ample opportunity, the CRMC took no steps to notice the application or otherwise perform its obligations. When KLNG was advised of the CRMC's position that such application constituted KLNG's submission to a regulatory process under state law, and that the state law process was unconstrained as to timing, KLNG withdrew the application and filed its currently-pending application on December 1, 2004.

5 The CRMC's assertion to the contrary is based on a partial quote of the transmittal letter. The quoted statement is that the December 1 filing would "restart the time period for CRMC review of its application as of December 31, 2004 which is three and a half months after KLNG's initial filing." Three and a half months after KLNG's August 20, 2004 filing was December 1, 2004. Moreover, KLNG restated its view that the review period commenced on December 1, 2004 in a February 16, 2005 letter to the CRMC. The CRMC did not make a contrary argument until March 15, 2005.

6 When the CRMC did ultimately give public notice of the CZMA Consistency Certification on March 15, 2005, it sent a letter to KLNG asserting additional deficiencies in the CZMA Consistency Certification. Those assertions have no impact on the review period because (a) they do not involve required information, and (b) they are well outside the 30-day objection period.

7 State of Rhode Island's Answer on Behalf of Defendants and Counter-Claim to Preserve Eleventh Amendment Rights, dated March 7, 2005 ("Answer") at 22.

("NGA"), 15 U.S.C. §§ 717 *et seq.*, the recodified federal Natural Gas Pipeline Safety Act ("NGPSA"), 49 U.S.C. §§ 60101 *et seq.* and the implementing regulations promulgated under those two statutes, which occupy the regulatory field over natural gas rates and facilities, such as KLNG's and (2) the CZMA itself does not create a foundation for the regulation of KLNG under state law.

**1. The Category B Assent Process Is Preempted By Federal Law**

The CRMC's Category B Assent process is a regulatory process created and governed by state law, which requires applicants to submit information regarding the need for a project, its safety, environmental impacts and compliance with local zoning, building and fire code requirements. KLNG's existing facility and its proposed upgrade to those existing LNG facilities (the "Project") are governed by and subject to the requirements of the NGA and the NGPSA. Those statutes and their implementing regulations constitute a comprehensive and exclusive scheme of federal regulation of natural gas transported and/or sold for resale in interstate and foreign commerce and the facilities associated with such transactions. Because KLNG's existing facility and proposed Project are subject to the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC"), application and enforcement of the Category B Assent process are preempted by federal law. KLNG's failure to file a Category B Assent application cannot, therefore, be deemed to make its CZMA filing deficient.

**a. FERC Has Exclusive Jurisdiction Over The Transportation And Sale Of Natural Gas For Resale In Interstate And Foreign Commerce And The Facilities Associated Therewith**

The NGA and NGPSA have long been recognized as a "comprehensive scheme of federal regulation" that confer "upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate and foreign commerce." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-01 (1988); *see Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 51 (D.R.I. 2000);

*Sound Energy Solutions*, 106 FERC ¶ 61,279 PP 21-27 (2004). They specifically regulate the siting, construction, operation and safety of natural gas facilities and preempt state laws and regulations that attempt to regulate such matters. *National Fuel Gas Supply Corp. v. Pub. Serv. Comm'n of NY*, 894 F.2d 571, 576-77 (2d Cir.), *cert. denied*, 497 U.S. 1004 (1990).[8] As this Court has observed:

> That regulatory scheme governs virtually every aspect of the transportation and sale of natural gas. It includes provisions for determining the price at which natural gas may be sold, whether natural gas facilities may be built or modified, where they may be located, the methods by which they are constructed, and the safety standards that must be observed. *See, e.g.*, *Schneidwind*, 485 U.S. at 306 (Michigan cannot regulate rates charged for natural gas); *National Fuel Gas Supply Corp. v. Public Service Commission*, 894 F.2d 571, 579 (2d Cir. 1990) (New York may not engage in site-specific environmental review of facilities); *ANR Pipeline Co. v. Iowa State Commerce Commission*, 828 F.2d 465, 470 (8th Cir. 1987) (Iowa may not impose its own safety standards on facilities); *Northern Border Pipeline Co. v. Jackson County*, 512 F. Supp. 1261, 1263 (D. Minn. 1981) (invalidating zoning requirement that pipeline must be buried six feet underground).

*Algonquin LNG v. Loqa*, 79 F.Supp. 2d at 51.

**b. The CRMC Is Preempted From Requiring A Category B Assent Process**

The CRMC's purpose in requiring KLNG to submit to a Category B Assent process as part of its CZMA certification is to subject KLNG to a state law process that is subject to state appellate review and, absent the agreement of the State, unconstrained as to time.[9] In *National Fuel*, the court held that the NGA preempted a New York statute requiring an interstate pipeline to obtain a certificate of environmental compatibility from the New York Public Service

---

8 *See also Northern Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 824 (8th Cir. 2004) (state land use and restoration regulation preempted); *Kern River Gas Transm. v. Clark County, Nev.*, 757 F. Supp. 1110, 1115 (D. Nev. 1990) (local government safety standards cannot be applied to an interstate pipeline if they conflict with FERC requirements or would unduly delay or encumber its construction); *No. Tanks Inc. v. Pub. Util. Comm'n*, 697 A.2d 1313, 1315-16 (Me. 1997) (the Public Utility Commission correctly ruled that it has no authority to adjudicate safety and environmental issues related to an LNG facility because such issues are regulated by federal law).

9 Answer at 13 ¶ 16.

Commission and that the state was not permitted to engage in a "concurrent site-specific environmental review." *National Fuel Gas Supply Corp,* 894 F.2d at 579. Accordingly, the pipeline was not required to comply with New York's regulatory scheme. *Id.* Similarly, in *Algonquin LNG*, this Court rejected a city's attempted application of local building and zoning code requirements to proposed modifications of the Algonquin LNG facility (now the KLNG facility), holding that "Congress clearly has manifested an intent to occupy the field and has preempted local zoning ordinances and building codes to the extent that they purport to regulate matters addressed by federal law." *Algonquin LNG,* 79 F.Supp. 2d at 52. This Court added:

> subjecting the project to regulation under the ordinance would be tantamount to conferring on the City the power to review and nullify FERC's decision regarding the modification of a facility used in the interstate transportation and sale of natural gas. The inevitable result would be to delay or prevent completion of the project, thereby presenting an obstacle to accomplishing the important federal purpose of ensuring that adequate and affordable natural gas is provided to home owners and businesses. Therefore, the ordinance and any licensing requirements contingent upon compliance with it are preempted by federal law.

*Id.*

In compliance with the comprehensive scheme of federal energy, environmental and safety regulation under the NGA, the NGPSA and the National Environmental Policy Act,[10] KLNG has submitted thousands of pages of documents, reports, and maps providing detailed information to FERC about the need for the Project; its engineering and construction plans; safety and security measures to be taken regarding the facility and the LNG vessels calling there; possible alternatives; and possible environmental impacts on, *inter alia*, air, water, marine life, land use, recreation, and aesthetics. In the past year, FERC has conducted a comprehensive environmental and safety review in which it has investigated the concerns raised by government entities, elected officials, individuals, and organizations. The CRMC, therefore, cannot engage

---

10 42 U.S.C. §§ 4321 *et seq.*

in a concurrent review of need, safety and environmental impacts, and compliance with local zoning, building and fire code requirements, which it would consider as part of its Category B Assent process. *See National Fuel*, 894 F.2d at 579.

Through the NGA and NGPSA, Congress has occupied the field of natural gas regulation and has thus preempted the Category B Assent process to the extent it purports to regulate matters addressed by those laws. *See Algonquin LNG*, 79 F. Supp. 2d at 52. Accordingly, KLNG cannot be required to comply with the Category B Assent process, and the CRMC cannot use KLNG's failure to submit to that process to object to KLNG's CZMA Consistency Certification.

**c. KLNG Would Be Harmed If Forced Into A Duplicative Process**

While it is FERC's practice to encourage applicants to cooperate with state and local agencies with regard to the siting of facilities, environmental mitigation measures, and construction procedures, this "does not mean that those agencies may undermine through their regulatory requirements, the force and effect of a certificate issued by the Commission." *Iroquois Gas Transm'n. Sys., L.P.*, 59 FERC ¶ 61,094, at 61,346-47 (1992); *Islander East Pipeline Co.*, 102 FERC ¶ 61,054, at P 111 (2003). Moreover, this practice "does not change the preemptive effect of the NGA." *Northern Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 824 (8th Cir. 2004).

"When a state regulation 'affect[s] the ability of [FERC] to regulate comprehensively . . . the transportation and sale of natural gas, and to achieve the uniformity of regulation which was an objective of the [NGA]' or presents the 'prospect of interference with the federal regulatory power,' then the state law may be pre-empted." *Schneidewind,* 485 U.S. at 310. In this instance, the Category B Assent process is preempted, and the CRMC has no basis to refuse to process

KLNG's application until it submits to that process. If the CRMC were permitted to hold the CZMA process and the Project hostage to the CRMC's Category B Assent requirements, the inevitable result would be to delay or prevent completion of this Project, thereby presenting an obstacle to accomplishing the important federal purpose of ensuring adequate and affordable natural gas supplies to Rhode Island and the New England region. *See Algonquin LNG,* 79 F. Supp. 2d at 52; *Sayles Hydro Ass'n v. Maughan,* 985 F.2d 451, 456 (9th Cir. 1993) (finding that the state process would be an obstacle to the accomplishment of the full purposes and objectives of Congress in authorizing FERC to license a hydroelectric project to proceed with construction); *NE Hub Partners, L.P. v. CNG Transm'n. Corp.*, 239 F.3d 333, 346, 348 (3d Cir. 2001) (noting that the need for an applicant to participate in a state regulatory process in conflict with federal policy is a hardship, and that a state regulatory process may be preempted by conflict with federal law).

### 2. The CZMA Does Not Create A Foundation For Regulation Of The KLNG Project By The CRMC Under State Law

The CRMC is expected to suggest that, because the Category B Assent process is embedded in its federally-approved coastal resources management program ("CRMP"), this fact invests the process, which the CRMC admits is purely a creature of state law,[11] with the weight of federal law. These arguments must fail. First, the provisions of the CZMA are straightforward and well-tested. Second, the CRMC's Category B Assent process is at odds with important substantive provisions of the CZMA. Third, any notion of "conditional" consent to the CZMA is wholly unsupported by both the CZMA and the State's Federal Consistency Manual. And finally, another federal court has rejected the notion that the CZMA elevates state permit requirements to federal requirements.

---

11 Answer at 20 ¶¶ 53, 57.

certification, the State undermines two important provisions of the consistency certification process that Congress adopted in the CZMA.

First, and perhaps most importantly, by claiming that KLNG is required to obtain a Category B Assent as part of the CZMA consistency certification process, the CRMC attempts to shift review of its consistency determination from the federal forum explicitly provided by Congress and into a state court. Congress preserved the primacy of the federal government in the CZMA consistency certification process by giving the Secretary of Commerce the power to override a state agency's objections to a federal applicant's consistency certification, and any appeal of an adverse determination by the Secretary would remain in the federal court system. 16 U.S.C. § 1456(c)(3)(A). The CRMC's denial of a Category B Assent, however, would only be reviewable in a Rhode Island State court. *See* Answer at 13, ¶16.

Second, although Congress explicitly required that states act on CZMA consistency certifications within six months, the Category B Assent process is, absent the consent of the State, unconstrained by any time limitation. By requiring a Category B Assent in addition to the CZMA consistency certification, the CRMC would have the power to circumvent the Congressionally-mandated six-month review period. This Court should reject the CRMC's attempt to undermine the CZMA consistency certification process.

**c. CRMC's Claim Of Conditional Consent To Participation In The CZMA Is Contrary To The CZMA And Not Supported By The State's CRMP**

The CRMC may argue that its participation in the CZMA process is conditioned on the applicant also partaking in the State Category B Assent program. It does argue that the CZMA's requirement that the CRMC's objection be reviewed by the Secretary of Commerce violates the State's sovereign immunity. Answer at 22. Thus, it argues that it must be permitted to maintain

its Category B Assent process, which is reviewable only in state courts. These arguments, however, concede that the Category B Assent process functions outside of the CZMA.

The CRMC cannot cite to any provision of the CZMA or the CZMA Regulations that permit a state to require a federal applicant to satisfy, as part of the consistency certification process, a state law permitting requirement that is contrary to the time limits and appeal provisions established in the CZMA.[14] A state's submission of its CRMP to the Secretary of Commerce is not a state consent, but rather a request for federal approval so that the state may enjoy the benefits (and accept the burdens) of the CZMA's delegation of authority. Indeed, another district court has reached this very conclusion:

> In return for developing programs consistent with federal policies and in accordance with the recommendations of federal agencies, states are granted monetary assistance and "consistency review" power over federal agencies' and licensees' activities.

*Granite Rock Co. v. California Coastal Comm'n*, 590 F. Supp. 1361, 1371 (N.D. Cal 1984), *rev'd on other grounds*, 768 F.2d 1077 (9th Cir. 1985); *rev'd on other grounds*, 480 U.S. 572 (1987). Thus, any CRMC claim that the CRMC's consent to the CZMA was conditioned on the CRMC also being permitted to require an applicant to apply for a Category B Assent as part of the consistency certification process must be rejected as inconsistent with the CZMA.

Assuming *arguendo* that the State could have conditioned its participation in the CZMA process on the parallel exercise of State authority, the CRMP contains no such condition.

---

14 *Mountain Rhythm Resources* clarified the limited role that state permit requirements may play—*as part of* and not in parallel with—the CZMA consistency certification process. 302 F.3d 958 (9th Cir. 2002). The court held that the county permit at issue "is not a power permit; it is merely part of the consistency evaluation process invoked by the responsible state agency . . . in exercising its authority to assess consistency with state coastal zone management that Congress has granted to the states in the CZMA." *Id.* at 967. In contrast, the State's Category B Assent process goes beyond being "merely part of the consistency evaluation process" and is intended to subject KLNG to a scheme of state regulation that is preempted by the NGA. As such, this Court must reject the State's argument that KLNG must comply with the Category B Assent process as part of the CZMA consistency certification process.

(5th Cir. 1950), *cert. denied*, 340 U.S. 829 (1950). Thus, Rhode Island's rights in and control over the lands under the Providence River can be exercised only consistent with the NGA and any FERC orders regarding KLNG's Project. Stated differently, there is no validity to the notion that the State can use its title to a submerged parcel of land to block or otherwise regulate a project authorized under preemptive federal law.

**B. The State's Ability To Protect The Public Trust Is Not Harmed Because The Federal Government Will Independently Determine That Use Of The Subsea Land Is In The Public Interest**

If FERC authorizes KLNG to construct and operate the proposed Project, it will do so as an exercise of the federal government's paramount right to regulate the transmission and sale of natural gas in interstate and foreign commerce, and only after determining that the Project is consistent with the public interest.[21] CRMC may appeal FERC's decision to a U.S. Circuit Court, but cannot block the Project by denying KLNG the right to use a small portion of the Providence River adjacent to KLNG's facility to construct the berth necessary for Project.[22] As fully set forth in Section I.B.1 *supra*, the CRMC is preempted from so doing under the NGA. *See Schneidewind*, 485 U.S. at 300-01. Congress placed ultimate authority for determining the location of interstate and foreign facilities with FERC, "a federal body that can make choices in the interests of energy consumers nationally." *National Fuel*, 894 F.2d at 579. Thus, the CRMC cannot prevent KLNG from constructing a berth in the location ordered by FERC. Nor does KLNG require eminent domain authority to obtain use of the land. In authorizing KLNG's Project, the federal government, through FERC, will have exercised the rights reserved to it

---

21 *See* 15 U.S.C. § 717b(a); *see, e.g.*, *Sabine Pass LNG, L.P.*, 109 FERC ¶ 61,324 at P 61 (2004) (LNG import terminal is in the public interest under section 3); *Freeport LNG Dev., L.P.*, 107 FERC ¶61,278 at P 20 (2004) (LNG terminal consistent with public interest).

22 KLNG would not, of course, have the authority to construct its Project until it has all other *necessary* governmental authorizations, *e.g.*, a CZMA consistency certification or an override of the State's denial of such certification.

under the SLA, and authorized KLNG's use of the land at issue. Accordingly, KLNG is not required to obtain permission from the State to use those lands for the purpose of constructing the berth.[23] The State's ability to protect the public trust is not harmed because FERC will make an independent determination that the KLNG Project serves the public interest in an exercise of the federal government's paramount rights to regulate natural gas facilities and to use submerged lands.

Even if the State's ownership interest in the parcel of submerged land was not subject to a paramount federal interest, the State's ownership position would not give it the power to engage in a comprehensive review of the entire project under state law, nor would it put the State in a position to deny a federally approved project. The most that could be required would be to determine the just compensation owed to the State for use of the lands. But the notion that title to submerged lands enables a regulatory process under state law, which then becomes a condition for initiation of the CZMA process, which in turn is a condition precedent to final approval of the Project by FERC under the NGA, is unsupportable.

## IV. CONCLUSION

Because there are no genuine issues of material fact and, as a matter of law: (1) the Category B Assent process is preempted by federal law and KLNG is not therefore required to obtain a Category B Assent; (2) the CRMC does not have the legal authority to require a Category B Assent as part of its CZMA Consistency Certification process; and (3) the State's rights in and control over tidal lands are subject to the federal government's paramount rights,

---

23 *See Iroquois Gas Transm. Sys., L.P.*, 52 FERC ¶ 61,091, at 61,403-04 (1990) (a New York state constitutional provision that would have prohibited the taking of State Reforestation Land for a pipeline was preempted by the NGA, which vests in FERC sole authority for determining an interstate pipeline route); *Iroquois Gas Transm. Sys., L.P.*, 59 FERC ¶61,094, at 61,346-47 (1992) (FERC's policy of encouraging cooperation with state agencies on siting matters, *inter alia*, "does not mean that those agencies may undermine through their regulatory requirements, the force and effect of a certificate issued by the Commission").

and the CRMC cannot therefore block or otherwise regulate activity authorized under preemptive federal law, KLNG's motion for summary judgment should be granted.

Respectfully submitted,

**KEYSPAN LNG, L.P.**
By its Attorneys,

Gregory L. Benik, Esq. (#1515)
John P. Walsh (#6709)
HOLLAND & KNIGHT LLP
One Financial Plaza, Suite 1800
Providence, RI 02903
Telephone: (401) 751-8500
Facsimile: (401) 553-6850

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing was mailed to following on this 18th day of April, 2005.

**COUNSEL FOR**
**THE STATE OF RHODE ISLAND**
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**
**(Counsel of Record)**

Michael Rubin, Esq. (#3656) **(by hand)**
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2116

Paul J. Roberti, Esq. (#4447)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2231

**COUNSEL FOR**
**CITY OF WARWICK**
**(Courtesy Copy)**

Peter Ruggiero, Esq. (#5733)
Assistant City Solicitor
Ruggiero, Orton & Brochu
20 Centerville Road
Warwick, RI 02886

**COUNSEL FOR CRMC**
**(Counsel of Record)**

Brian A. Goldman, Esq. (#3940)
681 Smith Street
Providence, RI 02908
(401) 521-4100

**COUNSEL FOR**
**CITY OF EAST PROVIDENCE**
**(Courtesy Copy)**

W. Mark Russo, Esq. (#3937)
Christopher M. Mulhearn
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

William J. Conley, Jr., Esq. (#2149)
City Solicitor – City of East Providence
East Providence City Hall
145 Taunton Avenue
East Providence, RI 02914

**COUNSEL FOR CITY OF PROVIDENCE**
**(Courtesy Copy)**

Adrienne G. Southgate, Esq. (#3363)
Deputy City Solicitor
City of Providence
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903

[signature]

# 2778925_v1