**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, INC.**<br>**Plaintiff**<br><br>**v.**<br><br>**THE RHODE ISLAND COASTAL RESOURCES MANAGEMENT COUNCIL, et als.**<br>**Defendants** | : | **C.A. No.: 05-091-S** |

**CITY OF WARWICK'S**
**AMICUS CURIAE BRIEF**

I. STATEMENT OF INTEREST

The City of Warwick, a duly organized and existing municipal corporation of the State of Rhode Island, has been granted leave to file an Amicus Curiae Brief in this matter regarding the motion and cross-motion for summary judgments currently pending before the Court in this matter. The City of Warwick is a coastal community with a resident population of 85,808[1], comprising nearly 40 miles of coastline along Narragansett Bay. Warwick is also home to more boat slips, moorings and marina services that use Narragansett Bay for recreational and commercial purposes than any other municipality in the state. Warwick's coastline also is home to many public parks and recreational areas frequented by thousands of persons each year. Warwick's Police Department includes nearly 200 uniformed personnel. The City's Fire Department is comprised of more than 200 members. Both the Police and Fire Departments participate in basic and limited advanced training in hazardous incident response. Both the Police and Fire Departments have personnel trained in water-based emergency response procedures. Despite their extensive training in emergency response, neither the Warwick Fire Department nor the Police Department has had the necessary specialized response training

[1] Dept. of Commerce, U.S. Census of Population 2000.



45

concerning an LNG tanker emergency. In addition, it is not known at this time whether an adequate number of City emergency response personnel would be available in the event of an LNG tanker disruption emergency.

The proposal by Keyspan LNG, Inc. (hereinafter "Keyspan"), seeks to site, construct and operate a new shipping and modified land storage facility for liquefied natural gas (hereinafter "LNG") at an existing property the company owns at Sassafras Point/Fields Point in the City of Providence (hereinafter the "Project").[2] Keyspan has filed for Section 3 authorization under the Natural Gas Act of 1938 (hereinafter "NGA") from the Federal Energy Regulatory Commission (hereinafter "FERC") to undertake the Project.[3] As part of the permitting procedure before FERC, Keyspan must also file certain required documents to comply with the National Environmental Policy Act (hereinafter "NEPA"), as FERC is the designated NEPA lead agency by the Environmental Protection Agency (hereinafter "EPA") for federal permit coordinating activities in this field. Keyspan may also be subject to federal permitting regulations of the Departments of Energy, Transportation, Defense, Interior, Homeland Security, the Army Corps of Engineers, the Coast Guard, the Maritime Administration, and the Occupational Safety and Health Administration. Keyspan is also subject to certain state and local permitting under NGA,

---

[2] See Keyspan's Complaint filed in this matter at page 4, paragraph 8. The application "requests authorization from the FERC to site, construct, and operate [a new ship berth in the Providence River and installing additional boil-off compression and condensing systems, LNG pumps, and indirect-fired LNG vaporizers]...and to abandon certain facilities that will be replaced by the proposed improvements.

[3] Congress has established a series of legislative acts to regulate the importation and rate schedules pertaining to interstate natural gas distribution and storage. Congress began its involvement with passage of the NGA of 1938. This act established a commission to oversee the importation/exportation of natural gas and to regulate rates on the interstate transmission of natural gas through the grant of a Certificate of Public Convenience and Necessity to proponents of interstate natural gas projects. FERC has authority under Section 3 of the NGA to regulate the importation/exportation of LNG and has authority under Section 7 of the NGA to regulate the siting, construction, enlargement and storage of LNG facilities. However, the FERC's Section 7 authority has been largely mooted by Congresses adoption of the Energy Policy Act of 1992. At this time, FERC has largely ignored any authority remaining under Section 7 of the NGA and, instead, relies almost exclusively on its Section 3 authority to regulate the importation of natural gas and LNG. However, Section 7(c) of the NGA permits a project proponent to use eminent domain authority to effect projects issued a Certificate of Public Convenience and Necessity. Keyspan admits this fact on p. 10 of their Summary Judgment Memorandum at fn. 18.

Section 3 authorization permitting. It is the nature and extent of state permitting authority which Keyspan asserts is limited and that has formed the basis of the dispute presently before the Court.

In their Verified Complaint filed with the Court, Keyspan asserts that the Rhode Island Coastal Resources Management Council (hereinafter "CRMC") has either been pre-empted under one or more of several theories by the Congress or is barred under one or more theories under the Supremacy Clause of the U.S. Constitution from implementing certain of its adopted regulations on the Keyspan Project.[4] The Court presently has pending a summary judgment action to determine whether the CRMC may impose certain regulations adopted under Section 307 of the Coastal Zone Management Act (hereinafter "CZMA"), 16 USC §§ 1451-1464, pursuant to Section 640.2-2 B. and Section 300 of the Rhode Island Coastal Resources Management Program (hereinafter "RICRMP") on the Keyspan Project.[5]

Warwick will be directly affected by the Court's decision. Review of the Keyspan Project under the purview of the RICRMP will afford the City a forum and the opportunity to protect its property and public interests from the potential adverse impacts associated with the Keyspan Project. The absence of RICRMP review will expert an unnecessary and unacceptable potential negative impact upon the City intere4st without an opportunity for due consideration of its concerns in a public regulatory forum. This Amicus Brief offers the City's arguments and the supporting authority to show the Court that the CZMA Section 307 authority conferred upon the

[4] In its Complaint filed in this matter, Keyspan asserts five Counts against the defendant; in summary, they are: (1) imposition of the state program is conflict with and pre-empted by Section 3 of the NGA and FERC Regulations adopted pursuant thereto; (2) imposition of the state program is an obstacle to interstate commerce and in violation of the Supremacy Clause of the U.S. Constitution; (3) imposition of the state program is field pre-empted by Section 3 of the NGA and FERC Regulations adopted pursuant thereto; (4) imposition of the state program is intruding into are area comprehensively and exclusively regulated by the FERC and is in violation of the Supremacy Clause of the U.S. Constitution; and, (5) imposition of the state program is an illegal attempt to interfere in areas of interstate commerce in violation of the Commerce Clause of the U.S. Constitution.

[5] Amicus acknowledge that several other issues are also pending before the Court in the motion and cross-motion for summary judgment. However, the only issue before the Court being addressed by this Amicus is whether Keyspan's Project filed under Section 3 of the NGA is subject to the RICRMP adopted pursuant to Section 307 of the CZMA.

CRMC and the RICRMP adopted thereunder is neither pre-empted by Congress pursuant to Section 3 of the NGA nor is in violation of the Supremacy Clause of the U.S. Constitution. The RICRMP is enforceable upon Keyspan's Project as part of the state's CZMA consistency review, pursuant to Section 3 of the NGA and applicable FERC regulations adopted thereunder.

## II. ARGUMENTS

1. The RICRMP Is Neither Pre-empted Nor In Violation Of The Supremacy Clause.

Keyspan's proposition that Section 3 of the NGA and the FERC Regulations adopted pursuant thereto constitute Congressional pre-emption of the RICRMP regulation of LNG projects is contrary to existing facts and legal authority. Keyspan offers little factually relevant and misplaced legal authority to support their Congressional pre-emption proposition contained in their submitted Plaintiff's Memorandum[6]. At best, Keyspan offers little more than an assertion that the state impliedly admitted that Section 3 of the NGA pre-empts RICRMP regulation of the Project. Keyspan offers little else to support its Congressional pre-emption proposition.

Existing authority and research shows that LNG project proponents have typically been required to obtain several federal agency permits, along with state, regional and local government permits.[7] It has been documented that up to 140 permits or approvals have been required from the various federal, state, regional and local permitting authorities to allow for the establishment of an LNG facility elsewhere in the country[8]. Is it possible that Rhode Island is subject to some special Congressional pre-emption not applicable to any other state

[6] Most of Keyspan's cited authority refers to decisional law construing applications filed under Section 7 of the NGA, not under Section 3 of the NGA, as is the case of the Keyspan Project. See, e.g., First Iowa Hydro-Electric Corp. v. FPC, 328 U.S. 152 (1946).
[7] See, e.g., Liquefied Natural Gas in California: History, Risks and Siting p. 12 (California Energy Commission (July 2003)).
[8] Id.

governments? Undoubtedly, such is not the case. If so, Keyspan would have cited such authority to the Court.

Unlike the certificate of convenience and necessity regulatory authority contained in Section 7 of the NGA, Section 3 is nothing more than a paper tiger with regard to site or facility evaluation concerns. Section 3 of the NGA declares that "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."[9] The regulatory framework established by the Congress was that "no person shall export any natural gas from the United States to a foreign country or import any natural gas from a foreign country <u>without having first secured an order of the Commission authorizing it to do so</u>.[10] Issuance of such authorization is warranted unless the commission finds "that the proposed exportation or importation will not be consistent with the public interest."[11] Even the FERC Regulations pertaining to the issuance of Section 3 NGA authorization states that the "purpose of this part is to implement the Commission's delegated authorities under section 3 of the Natural Gas Act…."[12] Any person proposing to site, construct or operate facilities which are to be "used for the export of natural gas from the United States to a foreign country or for the import of natural gas from a foreign country…shall file…an application for authorization…[under] section 3 of the Natural Gas Act."[13]

Section 307 of the CZMA requires that various federal activities that are reasonably likely to affect any land or water use or natural resource of the coastal zone <u>be consistent with a</u>

---

[9] <u>See</u> 15 USC 717(a)(2004).
[10] <u>Id.</u> at 717b.(a)(emphasis added).
[11] <u>Id.</u>
[12] <u>See</u> 18 CFR 153.1 (2004).
[13] <u>Id.</u> at 153.5.

state's approved coastal zone management program (hereinafter "Consistency Determination").[14] Of particular importance is the phase is consistent with a state's "approved" coastal zone management program. This term denotes that each state is authorized to adopt a unique program designed to meet the goals, objectives and priorities if that particular state. The Section 307 of the CZMA process authorized by Congress was not intended to be substantively uniform from state to state. Hence, Rhode Island was free to adopt a unique coastal management program within the authority of Section 307, subject to federal approval. CRMC's Consistency Determination process and substantive provisions therein, in particular Section 640.2-2B., were part of their approved coastal zone management program – the RICRMP.[15]

Juxtaposing the purposes of Section 307 of the CZMA and the RICRMP to the stated purposes of Section 3 of the NGA and FERC Regulation 18 CFR 153.1 adopted pursuant thereto clearly and undeniably shows the different goals, objectives and policies of each field entered by the Congress. The CZMA and RICRMP seek to regulate the impact certain federal activities may have on coastal zone resources. In comparison, Section 3 of the NGA and FERC Regulations adopted pursuant thereto seek to regulate only the importation and exportation of natural gas. Hence, there are no direct conflicts between the areas of Congressional regulation and neither federal legislative scheme attempts to exclusively occupy the regulatory field of the other. Neither Section 3 of the NGA nor FERC Regulation 153.1 seeks to regulate the potential impacts an LNG proposal may have on coastal zone resources. Section 3 of the NGA and the FERC Regulations adopted pursuant thereto merely evaluate whether the importation or exportation of LNG will be in the public interest. Conversely, the RICRMP does not seek to

---

[14] See 16 USC §§1451-1464 (2004)(emphasis added).

[15] In 1978 the RI Coastal Resources Management Program (hereinafter the RICRMP) was adopted (R.I. Gen Laws 46-23-*et seq.*) to establish the RI coastal zone management program under the CZMA. The status of the CRMC program has not been challenged by Keyspan and must be admitted as duly adopted and validly existing for the purposes of the decision now before the Court.

determine whether the importation or exportation of LNG is in the public interest. The CRMC Category B process merely seeks to determine whether the Keyspan Project will have a negative effect on Rhode Island's coastal zone resources.[16]

The Plaintiff asserts two theories of pre-emption for the Court to rule that the RICRMP cannot be imposed upon the Keyspan Project. Their first theory, field preemption, occurs only when a federal statutory scheme is sufficiently comprehensive to infer that Congress left no room for supplementary regulation by the states.[17] Clearly, Congress only regulated the importation and exportation of natural gas under Section 3 of the NGA. Nothing contained in Section 3 of the NGA evidences a Congressional intent that no other regulatory review could be performed on other aspects/impacts of a Section 3 application. Thus, even if FERC finds that the Keyspan Project serves the public interest, the CRMC Section 307 Consistency Determination review can proceed and is not pre-empted.

Keyspan's second theory, conflict preemption, exists only if there is an actual conflict between federal and state law, or where compliance with both is impossible.[18] Where a state law stands as an obstacle to the accomplishment and execution of the full purposes of Congress, conflict pre-emption can be found.[19] The so-called obstruction strand of conflict pre-emption only pre-empts a conflicting state rule to the extent it interferes with the federal statute or scheme. Once again, the CRMC Consistency Determination requirement for Keyspan does not conflict with or constitute an obstacle to the Section 3 NGA or FERC Regulation 153.1 determination process. A CRMC Consistency Determination under the RICRMP is neither in actual conflict nor obstructing the FERC determination as to whether Keyspan's importation of

---

[16] See Sections 300 and 400 of the RICRMP.
[17] Public Utility Dist. V. Idacorp Inc., No. 03-35207 (9th Cir. 2004).
[18] Id.
[19] Id.

LNG is in the public interest. Accordingly, the RICRMP Consistency Determination requirement that Keyspan must apply for and obtain a Category B Assent is not pre-empted under the conflict or obstruction strand of pre-emption theory.[20]

Under the Supremacy Clause, state laws that interfere with or are contrary to the laws of Congress, made in pursuance of the U. S. Constitution, are invalid.[21] Congress' intent to supplant a state authority in a particular field may be express or implied.[22] Here, nothing contained in Section 3 of the NGA indicates Congress expressly determined to prevent LNG proposals from being subjected to state rules not involving the import/export public interest determination authority delegated to the FERC. As such, the RICRMP Consistency Determination is not barred under the Supremacy Clause of the U.S. Constitution since the RICRMP Consistency Determination does not consider the import/export public interest factor.

If the Congress' intention is not explicit, an implicit intent can be found where a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement or to otherwise precludes state involvement.[23] Again, nothing contained in Section 3 of the NGA can be discerned to imply that Congress intended to prevent state rules in the area of environmental evaluation and coastal zone protection concerning the siting of LNG facilities. Nothing in Section 3 of the NGA pertains to site safety, environmental quality or the protection of coastal zone resources. The only issue regulated under Section 3 of the NGA, in this matter, is whether the importation of LNG as proposed by Keyspan is in the public interest. Section 3 of the NGA involves a very narrow regulatory scheme and leaves no room to question whether Congress intended, either explicitly or inferentially, to bar state

---

[20] Id.
[21] See Wisconsin Public Intervenor, et al v. Mortier, et al., 501 U.S. 597, 604 (1991).
[22] Id. at 604-605.
[23] Id. at 605.

regulation of coastal zone resources siting impacts associated with the construction of LNG storage and distribution facilities.

## III. CONCLUSIONS

Under Section 3 of the NGA Congress requires an applicant like Keyspan to obtain authorization from FERC as to whether the proposed importation of LNG would be in the public interest. FERC has not been delegated any other role by the Congress under Section 3 of the NGA. Likewise, Congress took no action in adopting Section 3 of the NGA to preclude or otherwise bar state rules concerning the siting impacts in coastal zones associated the establishment of LNG storage and distribution facilities. For these reasons, and those more fully stated in the body of this memorandum, the Court must find that the CRMC Consistency Determination adopted in the RICRMP is a valid and enforceable state rule that is neither pre-empted by Congress nor invalid under the Supremacy Clause.

Respectfully Submitted,
CITY OF WARWICK
AMICUS CURIAE

Peter D. Ruggiero (#5783)
Assistant City Solicitor
RUGGIERO, ORTON & BROCHU
20 Centerville Road
Warwick, Rhode Island 02886
401-737-8700 (voice)
401-737-0735 (fax)

Dated: 5-16-05

CERTIFICATION

I, the undersigned, do hereby certify that on the 16th day of May 2005, I served a true and accurate copy of the foregoing via U.S. mail, first class, postage prepaid upon the following persons:

Gregory L. Benik
HOLLAND & KNIGHT, LLP
One Financial Center, Suite 1800
Providence, Rhode Island 02903

Michael Rubin
RI Department of Attorney General
150 South Main Street
Providence, Rhode Island 02903

Brian Goldman
681 Smith Street
Providence, Rhode Island 02908

W. Mark Russo
FERRUCCI-RUSSO, P.C.
55 Pine Street, 4th Floor
Providence, Rhode island 02903

Adrienne G. Southgate, Deputy City Solicitor
City of Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island 02903

Mary Ann Leonardo