**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KEYSPAN LNG, L.P.** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-091S** |
| | ) | |
| **RHODE ISLAND COASTAL RESOURCES** | ) | |
| **MANAGEMENT COUNCIL, *et al.*** | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO**
**CITY OF WARWICK'S AMICUS CURIAE BRIEF**[1]

## I. Introduction

In its earlier pleadings, KLNG explained that the NGA and NGPSA form a comprehensive and exclusive national regulatory scheme governing the transportation and sale for resale of natural gas in interstate and foreign commerce and the facilities associated with such transactions, and demonstrated that the State's Category B Assent process is preempted by the NGA, NGPSA and their implementing regulations. KLNG observed as well that the CRMC has disputed KLNG's argument regarding the preemptive effect of the NGA and NGPSA in only one respect: their effect on State ownership of submerged land. The City of Warwick's ("Warwick") Amicus Curiae Brief ("Warwick Brief"), however, challenges the broad preemptive effect of the NGA. Warwick's argument is based on fundamental misunderstandings or misstatements of: (1) the breadth of both FERC's authority under the NGA and NGPSA and the preemptive effect of the regulatory scheme established by those laws, and (2) the effect of the Category B Assent process and the relief KLNG seeks in this proceeding, which is limited to seeking a ruling that the Category B Assent process is preempted, not to precluding the CRMC from carrying out its legitimate responsibilities under the CZMA. These fundamental errors completely undermine Warwick's arguments.

1 This Memorandum uses the same short forms for the names of agencies, acts, etc. that were used in KLNG's earlier memoranda in support of summary judgment.

47

## II. Warwick misinterprets the applicable provisions of the NGA by drawing meaningless distinctions between Sections 3 and 7 and misstates the federal preemption doctrine and the broad preemptive effect of the NGA and NGPSA.

Warwick tacitly admits that the regulatory authority contained in § 7 of the NGA is preemptive, but argues that § 3 would not have the same effect.[2] This distinction is baseless. The entire NGA, not just selected sections, is preemptive of state regulation of natural gas facilities. As explained at length in KLNG's prior pleadings, the NGA and NGPSA have long been recognized as a "comprehensive scheme of federal regulation" that confer upon FERC "exclusive jurisdiction" over the transportation and sale of natural gas for resale in interstate and foreign commerce.[3] It is the comprehensive framework established by those laws that provide a basis for preemption, not the individual sections considered independently. Based on this comprehensive regulatory scheme, in *Algonquin LNG*, this Court held that "Congress clearly has manifested an intent to occupy the field and has preempted local zoning ordinances and building codes to the extent that they purport to regulate matters addressed by federal law." *Algonquin LNG*, 79 F. Supp. 2d at 52.[4]

In any event, Warwick's attempt to distinguish between §§ 3 and 7 is irrelevant. Both FERC and the courts have long regarded FERC's authority over imports under §3 to be "at once plenary and elastic" and have found the "public interest" determination it must make under § 3 to

---

2 Warwick asserts for example that, unlike the authority in § 7, § 3 is "nothing more than a paper tiger with regard to site or facility evaluation concerns." Warwick Brief at 5.

3 *See* KLNG's April 18, 2005 Memorandum in Support of Summary Judgment at 4-7, citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-01 (1988); *Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 51 (D.R.I. 2000); *Sound Energy Solutions*, 106 FERC ¶61,279 at PP. 21-27 (2004).

4 Warwick's statement that LNG proponents must obtain numerous federal, state and local permits, Warwick Brief at 4-5, is only partially correct. KLNG must obtain consistency concurrences from the State under two federal statutes -- the CZMA and Clean Water Act. In addition, as noted in KLNG's earlier pleadings, it is FERC's practice to encourage applicants to cooperate with state and local agencies with regard to siting facilities, environmental mitigation measures, and construction procedures. This does not mean, however, that those entities may undermine through their regulatory requirements, the force and effect of a certificate issued by FERC nor change the preemptive effect of the NGA. *See* KLNG's April 18, 2005 Memorandum in Support of Summary Judgment at 7.

be "substantially equivalent" to the "public convenience and necessity" standard of § 7.[5] Thus, in *Distrigas*, the U.S. Court of Appeals for the District of Columbia Circuit found

> it fully within the Commission's power, so long as that power is responsibly exercised, to impose on imports of natural gas the equivalent of Section 7 certification requirements both as to facilities and -- what we suspect is of more vital concern to the Commission and to petitioners -- as to sales within and without the state of importation. Indeed, we think that Section 3 supplies the Commission not only with the power necessary to prevent gaps in regulation, but also with flexibility in exercising that power -- flexibility far greater than would be the case were we to hold that imports are interstate commerce, automatically and compulsorily subject to the entire panoply of Section 7's requirements.[6]

Furthermore, Warwick's suggestion that FERC is proceeding under § 3 rather than § 7 because its § 7 authority is "largely mooted" by the Energy Policy Act of 1992 is simply wrong.[7] FERC's decision to proceed under § 3 rather than § 7 is based on the fact that § 3 "better distinguishes foreign from interstate commerce and enables the Commission to employ the greater regulatory flexibility available under section 3 to respond and adapt to changes in the nature of the LNG industry." *See Sound Energy Solution*, 106 F.E.R.C. at P. 25.

---

5 *See Distrigas Corporation v. Federal Power Commission*, 495 F.2d 1057, 1064-65 (1974).

6 *Id.* at 1064.

7 FERC addressed the impact of the Energy Policy Act on FERC's authority in *Sound Energy Solutions*, 106 F.E.R.C. ¶61,279 at P. 26, where it explained:

> Originally, NGA section 3(a) . . . stood alone as section 3 in its entirety. Sections 3(b) and (c), which deem certain imports to be 'consistent with the public interest' and direct import applications be granted 'without modification or delay,' were added by the Energy Policy Act of 1992. The CPUC contends that this 1992 amendment 'stripped the FERC of the very conditioning authority and flexibility that Distrigas relied upon to give FERC the ability to impose conditions upon LNG facilities.' We disagree. While the EPACT rendered the DOE/FE import approvals for LNG and free-trade gas perfunctory, the Commission's authority to impose terms and conditions on the siting, facilities, and operations of importers was left intact.

## III. Warwick confuses CRMC review under the federal CZMA process and under the State Category B Assent process.

Warwick confuses the two CRMC procedures potentially applicable to the KLNG Project, *i.e.:* (1) the federal consistency review process that the CRMC is in the process of conducting pursuant to authority delegated to it by the CZMA, and (2) the State Category B Assent process to which, the State argues, KLNG is required to submit in order to use 450 square feet of submerged land owned by the State. Thus, Warwick argues, "even if FERC finds that the Keyspan Project serves the public interest, the CRMC Section 307 Consistency Determination review can proceed and is not pre-empted." Warwick Brief at 7.

KLNG agrees with this statement. The CRMC has broad authority to review the Project under the CZMA and to grant or deny a consistency certification. KLNG has never asserted that the CRMC's authority to conduct a consistency determination consistent with the CZMA is preempted.[8] There is accordingly no basis for Warwick's concern that preemption of the Category B Assent process would deny it "a forum and the opportunity to protect its property and public interests from the potential adverse impacts associated with the Keyspan Project." Warwick Brief at 3. Warwick in fact has two forums in which to raise its concerns. It may raise its property and public interest concerns at FERC, which is charged with the responsibility for conducting a thorough review of the environmental and safety impacts of the Project, determining its appropriate siting and deciding whether it is consistent with the public interest.[9] In addition, Warwick may raise its concerns regarding coastal zone impacts in the ongoing CZMA consistency certification proceeding before the CRMC.

Where KLNG and Warwick part company is on the question whether the Project is subject to the State Category B Assent process as well as the CZMA Consistency Certification

---

8 The CZMA like the NGA is a federal statute and is accordingly not subject to preemption.

9 Warwick is in fact a participant in the FERC proceeding in which it has submitted the attached comments.

process. Warwick's contention that the Category B Assent process is applicable is based on its inaccurate characterization of that process which, Warwick asserts, "merely seeks to determine whether the Keyspan Project will have a negative effect on Rhode Island's coastal zone resources." Warwick Brief at 7. This, however, is the goal of the CZMA Consistency Certification process. As explained at length in KLNG's preceding memoranda in support of summary judgment, the Category B Assent process goes much further, establishing a duplicative procedural scheme that is not subject to federal timelines and can result in a denial or conditional approval that can, according to the State, only be reviewed by a state court, not the Secretary of Commerce. Thus, contrary to Warwick's claim, the Category B Assent process does interfere with the comprehensive regulatory scheme established by Congress and administered by FERC and, if permitted to proceed, could obstruct FERC's ability to accomplish its responsibilities under the NGA and delay or prevent KLNG from constructing the Project. The Category B Assent process is therefore preempted and inapplicable to the Project. As a consequence, the CRMC cannot condition its exercise of authority under the CZMA on KLNG's submission to the Category B Assent process.

## IV. Conclusion

For all the reasons stated in this Memorandum and KLNG's previous memoranda in support of summary judgment, KLNG's motion for summary judgment should be granted.

KeySpan LNG, L.P.
By its Attorneys,

Gregory L. Benik, Esq. (R.I. Bar No. 1515)
Holland & Knight LLP
One Financial Plaza
Suite 1800
Providence, RI 02903
(401) 751-8500
(401) 553-6850 fax

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing was mailed to following on this 20th day of May, 2005.

**COUNSEL FOR**
**THE STATE OF RHODE ISLAND**
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

Michael Rubin, Esq. (#3656)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2116

Paul J. Roberti, Esq. (#4447)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2231

Terrence J. Tierney, Esq. (2583)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903

**COUNSEL FOR**
**CITY OF WARWICK**
**(Courtesy Copy)**

Peter Ruggiero, Esq. (#5733)
Assistant City Solicitor
Ruggiero, Orton & Brochu
20 Centerville Road
Warwick, RI 02886

**COUNSEL FOR CRMC**

Brian A. Goldman, Esq. (#3940)
681 Smith Street
Providence, RI 02908
(401) 521-4100

**COUNSEL FOR**
**CITY OF EAST PROVIDENCE**
**(Courtesy Copy)**

W. Mark Russo, Esq. (#3937)
Christopher M. Mulhearn
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

William J. Conley, Jr., Esq. (#2149)
City Solicitor – City of East Providence
East Providence City Hall
145 Taunton Avenue
East Providence, RI 02914

**COUNSEL FOR CITY OF PROVIDENCE**
**(Courtesy Copy)**

Adrienne G. Southgate, Esq. (#3363)
Deputy City Solicitor
City of Providence
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903

[signature]

# 2909815_v1